| | |
|---|---|
| 13 | 169 |
| 35 | 362 |
| 13 | 169 |
| 37 | 115 |

| | |
|---|---|
| 13 | 169 |
| f57 | 490 |
| f57 | 492 |

HENRY L. RITCH, APPELLANT, VS. ADAM L. EICHELBERGER, MICHAEL A. CLOUTS, EDWARD M. L'ENGLE, AND SAMUEL D. McCONNELL, APPELLEES.

Royall obtained judgment against Eichelberger, which was a lien upon all the real estate of E., consisting of several detached parcels, and execution was issued and levied upon the real property of E. Subsequently, E. mortgaged a portion of the property to Ritch. After this, C. H. & Co. obtained judgment against E. The sheriff, under the senior execution of Royall, advertised for sale the lands levied upon, including the mortgaged lands, the lands not mortgaged being ample to satisfy the Royall execution. Before, and at the time of the sale on the R. execution, L. and M. had purchased and were the owners of this Royall judgment and execution, and the mortgagee repeatedly tendered to them, and also to the sheriff, the amount due thereon, informing them of his mortgage lien, and of his desire to protect it, which tender was refused. The mortgagee then requested the sheriff to offer for sale the property levied on which was not included in the mortgage, or to offer any small fraction or subdivision of the property levied on, which the sheriff, under advice of the owner of, and of the defendant in the execution, refused to do. The sheriff then released from levy considerable property not mortgaged, and sold it under the C. H. & Co.'s junior execution, and offered for sale, and sold, against the protest of the mortgagee, the bulk of the mortgaged property, consisting of several distinct tracts in bulk,

12

leaving unsold only a small part of the mortgaged property, of value entirely insufficient to secure the amount stated to be due on the mortgage, but sufficient to pay the amount due on the Royall execution : *Held*,

1. That it was the duty of the sheriff to accept the tender of payment by the mortgagee, so that the mortgagee would not lose his security upon the mortgaged property. *Held further*, That it was the duty of the sheriff to have first sold the property of the defendant in execution not covered by the mortgage, and that the sale of the mortgaged property upon the execution while there was abundant other property levied on, out of which the execution could have been satisfied, was a legal fraud upon the rights of the mortgagee, and the purchaser, then being an owner of the judgment and execution, and having notice of all the facts, is not an innocent purchaser.

2. When a party has two funds out of which he can satisfy his debt, and a junior creditor has a lien upon one of the funds only, the first creditor will, in equity, be compelled to resort to that fund which the junior creditor cannot reach, so that the junior creditor may avail himself of his only security, where it can be done without injustice or injury to the debtor or creditor.

3. In a suit in equity to foreclose a mortgage given by E. to Ritch, it is proper to make parties all who have junior liens upon the mortgaged property, and all who have become purchasers under a prior lien, if such purchasers bought with notice of the equitable or legal rights of the mortgagee which were sacrificed by the improper proceedings of the officer making the sale, or of the owners of the lien under which the sale was made.

4. Royall made a *bona fide* sale to L. and M. of a judgment and execution which was a lien upon property covered by a junior mortgage, under which execution the mortgaged property was improperly sold, after the transfer of the judgment and execution. In a suit in equity, instituted for the purpose of foreclosing the mortgage, and to set aside the sale under the execution, it is not necessary to make the original plaintiff, who had so parted with his interest in the judgment and execution, a party to the foreclosure suit, as he had no legal or equitable interest in the matter.

5. A bill in chancery is not necessarily multifarious because it contains irrelevant or redundant matter. To render a bill multifarious, it must contain two or more good grounds of suit which cannot be properly joined in the same bill against the same or several defendants.

This is an appeal from a decree rendered in the Circuit Court for Marion County.

Henry L. Ritch files a bill against Adam L. Eichelberger,

and the other defendants, seeking the foreclosure of a mortgage executed by Eichelberger to him, as well as to set aside a sale of the mortgaged premises which had been made under a judgment at law rendered before the execution of the mortgage deed.   The material allegations of the bill are:

1. That at the date of Eichelberger's mortgage to Ritch, March 16, 1866, here sought to be foreclosed an execution in favor of William Royall against Eichelberger, in the hands of the sheriff, was in reality not fully satisfied, though it appeared to be so, there being about $600 due on it, for which, under an order of the Judge, obtained by petition at law, a new execution was issued, and there were other executions against Eichelberger which appeared to be satisfied.

2. That at December term, 1866, Cohen, Hanckell & Co. obtained judgment against Eichelberger, and execution delivered to the sheriff.

3. That March 6th, 1868, the sheriff, instigated by Eichelberger, and by L'Engle & McConnell, attorneys for Cohen, Hanckell & Co., to injure Ritch and defeat his mortgage lien, levied the said Royall execution upon said mortgaged lands, and upon lots in Ocala not mortgaged, which unmortgaged town lots were and were then known to them to be sufficient to bring money enough at sheriff's sale to satisfy said Royall execution, and that Eichelberger then had, known to them, abundance of unencumbered property more than sufficient to satisfy it.

4. That about the same time the sheriff levied the Cohen, Hanckell & Co. execution upon certain other lands of Eichelberger, and upon the equity of redemption of the lands covered by said mortgage.

5. That the sheriff advertised all these levies for sale on January 4, 1869.

6. That December 7th, 1868, L'Engle & McConnell purchased the said Royall execution, and thereafter controlled it.

7. That January 4, 1869, the sheriff, instigated by Eichelberger and by L'Engle & McConnell to injure and defeat

Ritch's mortgage lien, sold lands levied under both of said executions, to satisfy the Cohen, Hanckell & Co. execution, to L'Engle for $1,300, and on the same day complainant tendered to the sheriff and also to L'Engle the amount due upon the Royall execution, which they severally refused.

8. That January 23d, 1869, the sheriff advertised that on March 6th, 1869, he would sell the said mortgaged lands to satisfy said Royall execution, and certain other lands of Eichelberger, to satisfy said Cohen, Hanckell & Co. execution; and, instigated by said Eichelberger and by said L'Engle & McConnell to impair and defeat Ritch's said mortgage lien, omitted to advertise certain valuable town lots (describing them) originally levied upon and previously advertised under said Royall execution, and subsequently released therefrom, which were of less value than said mortgaged lands, but more than sufficient to satisfy said execution ; and on said sale day in March, refusing a tender of $1,500 by Ritch to satisfy it and save his lien, and refusing an offer by Ritch to bid the amount of said execution for even the smallest part of said land if he would offer it separately, sold the whole in bulk, in a manner to prevent competition, to said L'Engle for $2,000 to satisfy said Royall execution, and conveyed them to said L'Engle. The proceeds of this sale were applied to the Royall execution, leaving $1,164 72 surplus in the hands of the sheriff.

9. That said mortgaged town lot is the only part of said mortgaged land unsold, and would not bring one-sixth of the debt intended to be secured by said mortgage.

The bill prays that the sheriff pay the $1,164 72 to Ritch, with interest from March 6, 1869, it being the balance of the proceeds of the sale of the lands covered by said mortgage. That Ritch be allowed to redeem said sold mortgaged lands by paying the amount of said Royall execution, and upon the payment by him to said L'Engle of the balance of said purchase money, with lawful costs and expenses of securing titles. That said sheriff's deed be declared null and void,

Ritch vs. Eichelberger, et al.—Argument of Counsel.

and Ritch be restored to his original rights under said mortgage. That a receiver be appointed for the rents and profits of said mortgaged lands. That an account be taken of said debt to Ritch. That Eichelberger be decreed to pay Ritch what may be found to be due him, with costs of suit, or in default be foreclosed, and to deliver up the title papers, &c., and a prayer for general relief.

The defendants demurred:

1. That complainant has not by his bill shown any legal right or title to the discovery or to the relief sought.

2. That the bill is multifarious.

3. That it appears by said bill that William Royall is a necessary party to the bill, yet is not made a party.

4. That as to the discovery and relief sought against the defendant, Eichelberger, the complainant can have an effectual and complete remedy at law.

5. And for divers other good causes of demurrer thereto.

The demurrer was overruled, and defendants ordered to answer, whereupon the defendants appealed.

The petition of appeal sets forth:

1. That the Judge erred in overruling the demurrer.

2. That the judgment and decree ought to have been for the appellants sustaining said demurrer, instead of for the appellee overruling said demurrer.

3. That the order overruling said demurrer works a wrong and injury to the appellants, and was not necessary for the protection of any of the alleged rights of the appellee, as set forth in his bill of complaint.

*L'Engle & McConnell,* for Appellants.

The first ground of demurrer is that the bill does not show a right to the discovery and relief sought. The debt not being established, and the property admitted to be subject to the mortgage lien not being exhausted, the bill is prematurely filed and should be dismissed. 2 Hill Chy., 121; 1 Hill S. C., 113, 335; 2 Hill So. Ca., 611; 4 Rich., 197.

· Should the court reach a different conclusion, then we contend that the case made by the bill does not justify a court of equity in disturbing the title acquired by the purchaser ·at the sale under the *fi. fa.* The bill charges no fraud or irregularity in the judgment and execution under which the sale was made. There is, therefore, in these respects no ground for setting aside the sale. The charge is, that the proceedings of the sheriff under the *fi. fa.* were illegal, the bill alleging that the levy upon the mortgaged property was made by collusion between Eichelberger, L'Engle and McConnell, who combined to defeat the mortgage lien. This allegation is completely answered by the bill itself, which shows that L'Engle and McConnell had no interest in the execution when the levy was made, nor until ten months afterwards. If there was no collusion in making the levy, it must have been on the part of William Royall, or his attorney, or the sheriff who made the levy. The land here sold was subject to sale under the execution. If such a sale was prejudicial to the junior mortgagee, chancery would have protected his lien if it could have been done without prejudice to the rights of other creditors. He neglected to pursue his remedy, and now after a sale of such property under the *fi. fa.*, it is too late. The purchaser should not be disturbed. 1 John Cas., 505 ; 5 How., 192 ; 12 Fla., 185, 301 ; 1 Hill S. C. Ch., 113. It is no excuse that he sought relief in a court of law instead ·of a court of chancery and failed through this error. It was his own fault, and a court of chancery should not interfere now after a sale, when new equities, new rights and new interests are involved. (See authorities just cited.)

Another allegation in the bill is, that the appellee forbid the sale and tendered payment of the execution. The answer to this is, that the appellee was in no way connected with the process and had no right to instruct the sheriff. Having neglected his proper remedy, he could only have come in as a bidder. Had he become the purchaser, he

could have had relief by a bill seeking to foreclose his mortgage and an appropriation of the excess over the amount of the execution to his mortgage debt. Harper's Eq., 164. Nor was the sheriff competent to decide upon these equities, (8 Fla., 350; 12 Fla., 633,) or authorized under these circumstances to discharge the levy. Thomp. Dig., 355.

Another allegation is, that the land was sold in bulk. Even the defendant in execution could not assign this to avoid the sale, unless he furnished the sheriff with a map of the land dividing it into lots. 1 John. Chy., 502; Rice's Eq., 3.

The next ground of demurrer is, that the bill is multifarious.

The objects of the bill are, 1st. To establish a debt claimed to be due from the appellant, Eichelberger, to the appellee. 2d. To foreclose a mortgage from Eichelberger to the appellee. 3d. To set aside a sale made by the sheriff of Marion county to E. M. L'Engle under a *fi. fa.* older than the mortgage. 4th. To make the sheriff pay over to the mortgagee the surplus money from the sale under execution. 5th. That the mortgagee be allowed to redeem the land sold by the sheriff and purchased by the appellant, L'Engle. 6th. To have a receiver appointed to collect rents of the land now owned by the appellant, L'Engle. 7th. To compel the appellant, Eichelberger, to deliver to the appellee the deeds to the mortgaged land, and that an absolute title to this land be decreed to the appellee. The defendants below have no joint interest in these several objects of the suit. The other appellants have no interest in or connection with any accounts between Eichelberger and the appellee; nor have they any interest in the property now subject to the appellee's mortgage, nor are they parties to this mortgage. The other appellants have no interest in or connection with the title which the appellant, L'Engle, holds to the land sold under the Royall execution, nor will

they be affected if the sale be declared void. The question: of the appellant Clouts' liability to the appellee for the: surplus of the purchase money from the sale under the· Royall execution, is one in which the other appellees are in no way interested. And so throughout the whole bill, the· objects are distinct and separate, the interests of the appel-lants entirely different, and the prayer such as, if granted,. would require several distinct decrees.

Two or more distinct objects cannot be combined in one· suit. 1 Dan. Chy., 384, 385 and notes, 388, 390, 394, 396 ;. Story's Eq. Pld., 271, 272, 274, 278 and note, 280, 540 ;. 2 How., 619.

The next ground of demurrer is want of parties, William Royall not being a party to the suit. William Royall should be a party defendant, because he is the plaintiff in the exe-cution under which the mortgaged land was sold, which sale the appellee seeks to set aside. 2d. It being charged that the levy under this execution was made by collusion for the purpose of defeating appellee's mortgage, Royall should be a party defendant because he owned and con-trolled the execution at the time that the levy was made.. 3d. It being charged that L'Engle and McConnell bought. the execution from Royall on the day of sale, thereby· charging collusion and confederacy between L'Engle and McConnell and Royall, it is important that Royall should be a party defendant. 4th. Because L'Engle and McCon-nell have their action against Royall, if they fail to receive: the benefit of the execution purchased from him. Their claim against him would be for damages sustained by them in consequence of his selling to them an execution which was illegal. 1 Dan. Chy., 234, 240, 619 and note; 4 Fla., 11 ; Story's Eq. Pld., 540, *et seq.*

*Papy & Peeler*, with whom was *Geo. P. Raney*, for Ap-pellees.

*Geo. P. Raney* for Appellees.

The appeal in this case is taken upon four grounds :

1. That the bill shows no right to discovery. The power to compel discovery is one of the distinguishing attributes of a Court of Chancery, and whenever there is ground for equitable relief, discovery will be enforced, except where crimination or exposure to penalties, exposure of certain confidences, as those entrusted to attorneys by clients, and certain matters of State, would result. The case at best presents no grounds placing defendants within these exceptions. Adams' Eq., 105, *et seq*. This being the case, the discussion of this question is unnecessary.

2. *Multifariousness.*—Multifariousness, properly speaking, is where different matters having no connection with each other are joined in a bill against several defendants, a part of whom have no interest in or connection with some of the distinct matters for which the suit is brought, so that such defendants are put to the unnecessary trouble and expense of answering and litigating matters stated in the bill in which they are not interested, and with which they have no connection. Newland vs. Rogers, 3 Bar. C. R., 434-5.

The objection of multifariousness is confined to cases where the case of each defendant is entirely distinct and separate in its subject matter from that of his co-defendants ; for the case of one defendant may be so entire as to be incapable of prosecution in several suits, and some other defendant may be a necessary party to only a portion of the case. In the latter, multifariousness is not an available objection. 2 Ala., 571 to 573. It is not practicable to define multifariousness ; each case must be examined in reference to the leading principle not to subject one party to a litigation between others in which he has no interest, and not to allow a multiplicity of suits. 2 How., 618, 642-3 ; 2 Ala., 571.

3. Royall, the assignor of the execution, a necessary party. 8 Sme. & M., 357. There is no question as to payment of the execution. Plaintiff proposes in the bill to pay it, hence there is no liability upon part of R., and hence no interest.

4. That in relief sought against Eichelberger, plaintiff can have remedy at law.

The right to relief is shown by the following authorities : When one creditor has a lien on two funds, and another creditor a subsequent lien on one of these funds, the former will be compelled first to exhaust the subject of his exclusive lien, and will be permitted to resort to the other only for the deficiency. 1 Hopkins, 460 ; 8 Smedes & M., 357 ; 1 Jo. Chy., 447 ; 5 Jo. Chy., 239 ; 9 Cowen, 403. The principle of Clowes vs. Dickinson applies to mortgages as well as to absolute conveyances. 9 Paige, 103. According to the principles thus decided, the court will save the complainant harmless against the machinations of the defendants, particularly as the complainant sought the privilege of paying off the execution under which the defendant, L'Engle, purchased ; which execution he and McConnell owned and controlled prior to the sale.

HART, J., delivered the opinion of the court.

The first ground of demurrer in this case is, that the complainant shows by his bill no right to the discovery or relief sought. The bill is filed for the foreclosure of a mortgage alleged to have been duly executed by Eichelberger, a defendant, and acknowledged and recorded, and that there is due by its conditions over twelve thousand dollars. It prays a decree for the amount to be found due, and that it may be satisfied out of the property mortgaged, by a foreclosure of the equity of redemption. It alleges that the defendants have conspired and confederated to defeat and deprive him of his mortgage lien by certain unjust and inequitable acts, and have placed obstructions in the way in order to prevent him from enforcing his legal and equitable rights as a mortgagee, demands the removal of those obstructions, and that he may have such relief as he may be equitably entitled to without detriment or injury to any other person.

Let us look at the facts as they are stated in the bill. The

complainant, Ritch, holds a mortgage upon valuable plantation property, and also upon a town lot in Ocala, on which some twelve thousand dollars is due. Royall has a judgment which is a prior lien, on which some six hundred dollars is due, upon which execution issued and was levied upon the plantation property, and upon certain other property in Ocala not included in the mortgage, and much more than sufficient to satisfy the execution. Upon the sale day in December, 1868, on which day the property had been advertised to be sold, L'Engle & McConnell, two of the defendants, purchased the Royall judgment and execution, and then the sale under it was postponed to January, 1869. Subsequently to the making and recording of the mortgage, Cohen, Hanckell & Co., by L'Engle & McConnell, their attorneys, obtained judgment for a large amount against Eichelberger, upon which judgment execution was issued and levied upon the same property which had been levied upon under the Royall execution, and upon still other lands of Eichelberger, which were of considerable value, and also subject to the lien of the Royall judgment and execution. In January, 1869, the sheriff sold, under the Cohen, Hanckell & Co. execution, lands not covered by the mortgage, but subject to the lien of the Royall judgment and levied upon under it, for an amount more than sufficient to pay the Royall execution. At the same time the sheriff offered for sale in bulk the property levied upon under the Royall execution, including the mortgaged lands. The complainant protested against the sale being made in this manner without avail. He then requested the sheriff to offer the property for sale in parcels, according to the subdivisions described, or any fraction of any such subdivision, offering to bid for it the full amount of the execution. This was refused by the sheriff and by the owners of the execution. The complainant then tendered the whole amount of the execution in payment thereof, whereupon the money, in legal tender notes, was taken and counted over by the defendant, L'Engle, and then re-

fused by him ; whereupon the same tender was made to the sheriff, and refused by him.   The sale under the Royall execution was again postponed, and the sheriff then advertised for sale the mortgaged lands only under that execution, omitting and releasing the other property previously levied on, and advertised the said other property for sale under the Cohen, Hanckell & Co. execution, both sales to take place in March, 1869, and the property so levied on under the Cohen, Hanckell & Co. execution, (and which had before been levied on and offered for sale in January under the Royall execution and released from it,) was then on March sale day sold under the Cohen, Hanckell & Co. execution to said defendant, L'Engle.  Afterwards, on the said March sale day, the sheriff offered for sale all the mortgaged property except the town lot, when complainant again offered and tendered payment in full of the Royall execution, which tender was refused.   He then requested the sheriff to put up and offer any one of the subdivisions of the land as advertised, or any fractional part thereof, offering to bid the whole amount of the Royall execution.   This was also refused, and the whole plantation property · was then offered for sale, and actually sold to said L'Engle for two thousand dollars, and the sheriff executed deeds therefor to said L'Engle.   The amount bid was first applied to the Royall execution and costs, and there remained a balance in the sheriff's hands of $1,164 72.   The town lot in Ocala would not sell for more than $2,000 or $3,000, and is the only portion left of the mortgaged property not sold under this Royall execution, and is entirely insufficient in value to satisfy the mortgage debt of the complainant.

Why the amount of the Royall execution was not accepted by the sheriff or by the owners of the execution when offered and tendered, and why the sheriff refused to sell the town property, or a small fraction of any of the property under the circumstances, so that the complainant might preserve some adequate security for his mortgage debt ; or why

any portion of the mortgaged property should be sold, (other property having been levied on sufficient to satisfy the execution and released to junior creditors,) or why that other property was released from levy, it is difficult to conjecture, upon the statement made in the bill, except upon the theory and for the reasons alleged by the complainant.

Where a party has two funds out of which he can satisfy his debt, and another creditor has a lien posterior in point of time on one of the funds only, the first creditor will, in equity, be compelled to resort to that fund which the junior creditor cannot touch, in order that the junior creditor may avail himself of his only security, where it can be done without injustice or injury to the debtor or creditor. This principle, which is so equitable and just, was thus illustrated by Lord Hardwick in Lanoy vs. The Duke and Dutchess of Athol, 2 Atk., 446: "Suppose," he said, "a person who has two real estates mortgaged both to one person, and afterwards only one estate to a second mortgagee, the court, in in order to relieve the second mortgagee, have directed the first to take his satisfaction out of that estate only which is not included in the mortgage to the second mortgagee, if that is sufficient to satisfy the first mortgage, in order to make room for the second mortgagee."

But a court of equity will take care not to give the junior creditor this relief if it will endanger thereby the prior cred_ itor or in the least impair his right to raise his debt out of both funds. Evertson vs. Booth, 19 John., 486. And it is further held in that case that the junior creditors might have applied to pay up the prior incumbrance, and thus substituting themselves in the place of the prior mortgagee, have availed themselves of all his rights; and in Schreyver vs. Teller, 9 Paige, 173, the Chancellor says: "If the judgment creditors were seeking to enforce collection of their judgments against the mortgaged premises, (their judgments being also a lien upon other lands,) to the prejudice of the mortgagee, he would have an equitable right to insist that

if he paid the judgments, he should have an assignment thereof to enable him to obtain a repayment out of the surplus proceeds of the property not mortgaged in preference to purchasers or incumbrancers of that property, whose claim thereon had accrued subsequent to the date of his mortgage." In Rathbone and others vs. Clarke and others, 9 Paige, 648, the Chancellor remarks that the proper decree in a case where the rights of the defendants were not set out in the bill of foreclosure, and the right to a foreclosure was not questioned, was to direct the master to sell the mortgaged premises in the inverse order of the alienation of the several parcels, and according to equity as between the defendants; leaving the master to settle the order of sale upon the principles of equity.

The equitable and legal rights of junior incumbrancers in such cases, and the duty of officers in making sale, are thus emphatically treated by Chancellor Kent in Woods vs. Monell, 1 John. Chy. R., 502: "I have no doubt of the value and solidity of the rule, that where a tract of land is in parcels distinctly marked for separate and distinct enjoyment, it is, in general, the duty of the officer to sell by parcels, and not the whole tract in one entire sale. To sell in parcels is best for the interests of all the parties concerned. The property will produce more in that way, because it will accommodate a greater number of bidders and tends to prevent odious speculations upon the distress of the debtor. Nor does the officer act within the spirit of his authority if he sells more than is requisite to satisfy the execution. To sell a whole tract when a small part of it would be sufficient, or probably sufficient for the purpose, *is a fraud that ought to set aside the sale.* The principle which I have suggested has received a judicial sanction, (Rowley vs. Webb, 1 Binney, 61; Extrs. of Stead vs. Course, 4 Cranch, 403; Hewson vs. Deggert, 8 Johns., 333,) and whenever a case comes fairly within the reach of it, I shall very willingly adopt and apply it."

We understand from the bill in the case at bar, that the lands subject to the mortgage and which were levied upon under the Royall execution were described as several distinct lots and parcels, making it necessary to produce a map or survey for the purpose of identifying and describing each parcel and the quantity and value of each.

The cases of Clowes vs. Dickenson, 5 Johns. Chy., 235, and Gill vs. Lyon, 1 J. Chy., 447, cited by counsel, and many other cases which we have examined, are so uniform and so pointed in the same direction, that we think there can be no conflict of opinion in regard to the question here presented.

The purpose of the plaintiff in the Royall judgment, or of the owners of the execution, was, legitimately, to collect the amount due thereon. The acceptance of the payment tendered by a junior creditor having a lien upon a portion of the property, made for the evident purpose of protecting his rights, would have given the prior creditor all that he could get by the delay and the expense of making a sale. The request of the mortgage creditor that the prior creditor first exhaust the defendant Eichelberger's other property already under levy before coming upon the mortgaged portion, was one which the prior creditor and the officer were bound to respect. The actual release from levy of property levied upon by virtue of the execution under the prior judgment, and of sufficient value to pay the execution twice over, and the sale of that property which constituted the principal security of the complainant against his repeated remonstrances, and in the face of a repeated tender of the amount due up to the moment of the sale on the execution, so involves the officer who made the sale that he is deemed to have been properly made a party to this suit.

It was urged in the argument that this bill is prematurely brought as against the purchaser under the Royall execution, and that the complainant should first have proceeded to the sale of that part of the property covered by the mort-

gage, which was not sold under the execution. The bill alleges that it has depreciated in value since the date of the mortgage, and is not of present value enough to pay more than about one-sixth of the mortgage debt. The future progress of this suit will show whether this is true or not. For the present, its truth is admitted by the demurrer.

It is contended for appellants that, admitting the alleged indebtedness of Eichelberger to Ritch, and that the mortgaged property unsold is not sufficient to pay it, the court cannot disturb the title of L'Engle acquired by the sale of March, 1869, under the Royall execution, the judgment and execution not being alleged to be fraudulent, unless the proceedings by the sheriff were illegal; and that under such circumstances, even if, after sale, the judgment should be reversed, the title of an innocent purchaser without notice will not be disturbed. The case made by this bill sets forth that the proceedings by the Sheriff were irregular and illegal, and that the purchaser had notice and conspired with the sheriff in his acts that made them so; and the doctrine contended for does not apply.

It was suggested in argument that L'Engle and McConnell had no interest in nor control over the Royall execution at the time when the levy was made, and not until ten months thereafter; that the bill shows no benefit that could accrue to them or to Eichelberger, from which to presume collusion; that if there was any, it must have been on the part of Royall or his attorney and the former sheriff who made the levy, neither of whom is a party to this suit. It is true that the bill complains of the levy, but it also complains of the sale, and of the part that L'Engle & McConnell and Eichelberger took in it; and as L'Engle & McConnell were the owners of the Royall execution at the time of the alleged illegal sale, and one of them became the purchaser of the said mortgaged property under it, the making parties of them reaches the most material facts complained

of, so as to enable the court to do equity between all the parties actually in interest.

It is argued that a judgment as soon as entered, and a *fi. fa.* as soon as delivered to the sheriff, create a lien upon all the property of the defendant within the jurisdiction of the court rendering the judgment; that a *fi. fa.* may be levied upon any property that is subject to it; that the defendant in execution may have the levy discharged by pointing out other property sufficient to satisfy the judgment; and that fraud is not shown because the defendant does not see fit to do so. It was not so much the levy as the sale that oppressed the complainant; and here the defendant in execution is not charged with fraud upon the plaintiff in execution, but it is charged that while he (the defendant in execution) had abundance of property not subject to the junior lien to satisfy the prior lien, he and the other defendants, knowing this fact, so contrived the sale as to sacrifice most of complainant's securities, when justice to all did not require it; that the intention and effect of said contrivances were to weaken or destroy the plaintiff's security, to prevent competition, and to encourage and reward unjust speculation by the defendants at the expense of complainant, greatly to his injury.

It is further argued that if a *fi. fa.* be levied upon property subject to a mortgage junior to the judgment, the mortgagee has a remedy provided by law, and should pursue that remedy. He should file his bill of complaint to marshal the defendant's assets, and should call in all his prior lien creditors. If he neglects to pursue his proper remedy until after a sale of the property, it is too late to ask that the sale be set aside, and the title vested in the purchaser disturbed.

This doctrine might be applied if the vendee was not by the allegations in the bill excluded from any present ruling in favor of innocent purchasers.

The authority of the sheriff to change the levy made by

186 SUPREME COURT.

Ritch vs. Eichelberger, et al.—Opinion of Court.

a former sheriff is denied by appellants. Such denial would imply that such officer is bound by the levy made by his predecessor, however erroneous, oppressive, or fraudulent it might be, and though he might be aware of gross illegality in it, he would be powerless to change it for a legal and just levy, and would be obliged to sell all of the former levy as made, and in bulk, even though he might be assured that any small part of it would bring enough to satisfy the execution. Thompson's Digest, 355, is cited as sustaining this argument, but the statute does not go that far, and a diligent search of the authorities fails to disclose such a restriction upon the official authority of any sheriff. Indeed, the sheriff *did* abandon the levy in January, 1869, of a part of the property levied on and advertised, and sold only the mortgaged property under the senior judgment.

It is argued that if the defendant in execution had forbid the sale and tendered payment, there would be some force in it, but that the appellee was in nowise connected with the process, and had no right to instruct the sheriff. That, having neglected to take the necessary steps to restrain the sale, he could only come in as a bidder, and by becoming the purchaser, obtain relief by bill to foreclose his mortgage, praying that the surplus should be substituted for the land and applied to the payment of his mortgage debt. In Burnett and others vs. Denniston and others, 5 Johns. Ch. R., 35, Chancellor Kent held that where a subsequent judgment or mortgage creditor tenders to a mortgagee the full amount of the debt and interest due on the prior mortgage, with costs, which he refuses to accept, unless another debt due to him from the mortgagor not charged on the premises is also paid, but proceeds to sell the land under the mortgage, such sale is irregular and void. Nor can the defendant, W. G. D., (says the Chancellor,) be entitled to protection as a *bona fide* purchaser without notice. It is in proof that the plaintiffs, or one of them, was present at the sale, and in the presence of the defendant, W. G. D., forbade the sale, and

stated publicly the right of the plaintiffs and the fact of the tender.

The sheriff had authority to accept the payment tendered by this mortgagee, and had he done so and tendered it to the execution creditors, it was all that they had any right to demand, and they must have been held to be satisfied with it. It was no part of the duty of the sheriff to exercise his authority in such a manner as to result in needless injury to the existing interests of any person, and no part of the object of the execution to aid any person in impairing that mortgage lien. No person but the sheriff had any lawful control of the sale. He had authority to discontinue it, and had he returned the writ, " satisfied by payment by Henry L. Ritch, a mortgagee of the land levied on, in order to save his mortgage lien," no court would have ever questioned the justice of his act. The refusal to accept the payment afforded no protection to any rights of the defendant in execution; it was no right of his to have his property thus sold, nor that of the plaintiff in execution, nor his assigns, whose only right was to have the amount of their judgment debt. The tendency of the refusal and the sale was to impair the mortgage lien, and the bill alleges that to have been the intention, and that Eichelberger, and L'Engle & McConnell, the assignees of the execution, and one of them the purchaser of the mortgaged property, conspired with the sheriff against the complainant to have it done. If this is true, and it is admitted by the demurrer, the bill is full of equity. Nor is the appellee justly subject to the charge of neglect of his remedy. · He had a right to expect that the sale would be fairly conducted by the sheriff, and that the tracts of land would be offered separately by the descriptions by which they had been levied upon and advertised, so that he could bid the full amount of the execution for any one of them, and thus save his lien. It was the duty of the sheriff so to offer them, if he sold them. By his acts the complainant was hedged in by circumstances in nowise essential to jus-

tice, that left him no just opportunity to save his lien. The officer of the law was evidently working against him, and from no fault of his, when it was the duty of the officer to act justly, favoring no one. Had he accepted the tendered payment, the property and all questions concerning it would have remained as they were, the execution would have been paid, and no injustice resulted to any one.

It is argued that the sheriff is not competent to decide upon equities between parties not connected with the process; and yet, by refusing to accept the payment by one so deeply interested in the property, as he must have known the complainant to be, he refused the best possible performance of the duty imposed upon him, and did discriminate in favor of one against another.

It may be true that in the prayer of the bill there are matters of relief prayed which are not warranted by the facts stated, but there are some to which the complainant is entitled. There is also a general prayer for relief.

It is usual to add the general prayer for such relief as the particular circumstances of the case may require; so that if the complainant mistakes the relief to which he may be entitled, the court may yet afford him that relief to which he he has a right, and it has been said that a prayer for general relief, without a prayer for particular relief, to which the party thinks himself entitled, is sufficient, and that the particular relief which the case requires may be prayed at the bar. Cooper's Eq. Pl., 14; 2 Atk., 3. And may amend the prayer for relief in order to pray for other relief, where improper relief has been prayed. Cooper's Eq. Pl., 333; 12 Vesey, 48. This demurrer goes not to any particular thing prayed for, but to the whole prayer for relief; and if the bill shows a right to any of the relief sought, the demurrer is not good, though some portions of the prayer may not be well founded, and may be mere surplusage.

The second ground of demurrer is, that the bill is multifarious. It is true that there is a considerable portion of the

bill devoted to the narration of matters which may be unimportant and irrelevant, but this is not necessarily multifariousness. To render a bill multifarious, it must contain two or more good grounds of suit, which cannot properly be joined in the same bill against the same or different defendants. 9 Paige, 188. A plaintiff may have a good cause of action against each of several defendants, but the determination of each of which severally does not affect the others; or where a party is brought in as a defendant upon a record, and he has no connection with the case made by the bill against others. In such a case the party so brought in may demur, but more properly for a misjoinder of parties. Story's Eq. Pl., par. 530. " In order to determine whether a suit is multifarious, or, in other words, contains distinct matters, the inquiry is not whether each defendant is connected with every branch of the cause, but whether the plaintiff's bill seeks relief in respect of matters which are in their nature separate and distinct." " If the object of the suit be single—but it happens that different persons have separate interests in distinct questions which arise out of that single object—it necessarily follows that such different persons must be brought before the court, in order that the suit may conclude the whole subject." " A bill in equity is not multifarious where one general right is claimed by the plaintiff, although the defendants may have separate and distinct rights." 1 Daniel's Ch. Pl. and Pr., mar. p. 386, and note 2. " And in the case of the Attorney General vs. Poole, where the case against one defendant was so entire as to be incapable of prosecution in several suits, but yet another defendant was a necessary party in respect of a portion only of that case, it was decided that such other defendant could not object to the suit on the ground of multifariousness." *Ibid.*, top p., 401. It is thought that these authorities meet all the grounds of argument urged in support of this objection. Tested by any rule laid down in the books, the bill in this case is not liable to the objection.

The third ground of demurrer is, that William Royall is a necessary party, as shown by the bill. The bill shows that Royall, the plaintiff in the execution, sold and assigned his judgment and execution to L'Engle & McConnell in December, 1868, after it had been levied upon the mortgaged property, and upon other property of Eichelberger sufficient to satisfy the judgment without reaching the mortgaged property, and that after the assignment by Royall, the sheriff, by direction of L'Engle & McConnell, released from the levy the property not mortgaged, and advertised for sale, and sold, only the mortgaged property. This is the wrong complained of, and Royall was in nowise a party to it, nor can he be affected by this suit in any event. He is not a necessary party.

The fourth ground of demurrer, that the complainant has a remedy at law as to Eichelberger, was not insisted on.

The order of the Circuit Court, overruling the demurrer, must be affirmed.