HENRY F. GRAHAM ET AL., APPELLANTS, VS. THE
FLORIDA LAND AND MORTGAGE COMPANY, LIM-
ITED, APPELLEE.

1. In order to maintain a bill to remove a cloud from the title to
real estate, the general rule is that where the complainant has a
legal title he must be in possession. The basis for such relief in
equity is the want of, or inadequacy of a legal remedy in cases
where a deed or other instrument of writing exists which may
be vexatiously or injuriously used against a party after the evi-
dence to impeach or invalidate it is lost, or which may cast a
cloud or suspicion over his title and he can not immediately
protect his right by any couse of proceeding at law. In the ap-
plication of this rule courts of equity have, independent of stat-
utory authority, held that where a complainant has the legal
title to lands that are wild, unimproved and unoccupied, he may
invoke the aid of chancery to remove a cloud upon his title, al-
though he has no other than constructive possession resulting
from legal ownership.

2. Where a bill is filed to remove a cloud from the title to
wild and unimproved lands, it is essential that it should be,
alleged in the bill and proved, that the lands are wild and un-
improved.

.3. The record of a tax deed under Chapter 3413, laws of 1883, which makes the tax deed *prima facie* evidence of the regularity of the proceedings from the valuation of the land by the assessor to the date of the deed inclusive, and bars suits by the former owner to set aside a tax deed made in pursuance of any sale of lands for taxes unless commenced within three years after the record of such deed in the county where the lands lie, does not of itself vest such possession of the lands in the grantees in such deeds as to authorize the former owner to sue for their recovery at law, and to defeat his remedy in equity to remove the tax deed as a cloud when such is the case.

4. The purpose of the 26th section of Chapter 3413, laws of 1883, providing that any assessor, when making his assessment, shall discover that any land in his county was omitted in the assessment roll of either or all of the three previous years, and was then liable to taxation, he shall, in addition to the assessment of such land for that year, assess the same separately for such year or years that it may have been so omitted, at the just value thereof in such year, noting distinctly the year when such omission occurred, was to impose upon the land subject to taxation and omitted from the tax roll of any or all of the three years past at the time of any annual assessment, their just proportions of the burdens of government by being taxed at the just value thereof in the year or years they were omitted from the roll, and the taxes properly chargeable thereon were not paid.

5. In 1883 a large body of lands were assessed to the then owner by descriptions properly identifying them, but no valuations were placed opposite the several descriptions of the lands and no amounts of taxes for state and the various county purposes were set down in separate columns opposite such descriptions. The total number of acres assessed together with the aggregate valuation of the same and also the aggregate amounts of taxes due thereon, for state and the various county purposes, were set out in the assessment roll. The collector of revenue advertised the lands for sale in the year 1884 for the non-payment of the taxes so assessed in the year 1883, and a portion of them were sold for the entire amount of taxes so assessed against them. The purchasers at this tax sale paid the amount of the taxes for which said lands were sold to the collector, who accounted to the Comptroller for the amount of the state taxes collected which went into the state treasury and was retained. The same lands were again assessed in 1885, for the years 1883, 1884

and 1885, and sold by the collector of revenue in 1886 to the State, for the entire amount of taxes assessed for the three years mentioned: *Held*, That by the receipt by the proper officials under the sale of 1884 of the entire amount of taxes assessed against the lands for the year 1883, the taxes chargeable to the lands for that year were satisfied and discharged, and the State had no authority under Section 26, Chapter 3413, to again assess said lands in 1885 for the taxes so satisfied and discharged: *Held further*, That the sale in 1886 for the entire taxes assessed for the years 1883, 1884 and 1885, was void for the reason that the part of the taxes assessed for the year 1883 was illegal.

6. Where a sale is for an entire tax and a part of it is legal and a part illegal, the illegal portion vitiates the entire sale.

7. Under Chapter 3685, laws of 1887, the Comptroller was authorized to refund amounts received for state taxes only when the lands at the time of assessment were not subject to taxation, or the taxes on them had been paid at the time of sale.

8. As a general rule a party will not be permitted to assume inconsistent positions in legal proceedings, and when he has successfully made an allegation in pleading in reference to a fact, he will be estopped to deny the truth of such allegation in a subsequent action between the same parties involving the same transaction; but before such allegations will have the effect of an estoppel they must be clearly inconsistent with each other.

9. At common law a purchaser at a tax sale buys subject to the rule *caveat emptor*, and gets nothing unless he secures the land itself. The requirement that the land owner upon recovering the land shall refund the taxes that have been paid on the land by the tax claimant, prior to the adoption of the Constitution of 1885, depended upon statutory regulation.

10. The setting aside of orders made by the clerk at rules, dismissing bills for want of replication, and the extension by the court of time for taking testimony allowed by the rules of practice, are matters in the discretion of the court when exercised within the limits of the rules prescribed; and in the absence of showing that such discretion has been abused, the appellate court will not interfere with the action of the court in such matters.

11. Where the testimony submitted to a chancellor is not sufficient on some point to authorize a just decree in the cause, and it

clearly appears from the record that testimony does exist on such point sufficient to enable the court to make a just decree, the cause will be remanded with directions to take further testimony on such point.

Appeal from the Circuit Court for Hamilton county.

The facts of the case are stated in the opinion of the court.

*C. P. & J. C. Cooper* for Appellants.

*W. B. Young* for Appellee.

Mabry, J.:

The Florida Land and Mortgage Company, Limited, filed a bill to have a certain tax deed obtained by Henry F. Graham and Lester Hubbell, and certain conveyances executed by them and their grantees, cancelled and removed, on the ground that they constituted a cloud upon the title to alleged real estate of the company situated in Hamilton county, Florida. On final hearing the chancellor decreed that said tax deed and conveyances thereunder were void, and that they be cancelled upon the payment by the complainant company of certain sums of money on account of taxes paid on the lands in question by the defendants since the issuance of the tax deed declared void. From this decree the defendants appealed, and the first question which they present for our consideration calls in question the jurisdiction of the Circuit Court to entertain the suit. It is contended that the Florida Land and Mortgage Company when it filed its bill was not in possession of the lands therein described, and as a consequence could not maintain a bill to remove a cloud upon the title to the same. The lands in question embrace a large body consisting of some seventy thousand acres.

The bill alleges that these lands were granted by the State of Florida in February, 1883, to Sir Edward J. Reed, and by him afterwards conveyed to the Florida Land and Mortgage Company, Limited, the deed from the State to Sir Edward J. Reed, and from him to the Florida Land and Mortgage Company being duly recorded in Hamilton county. It is further alleged that all of the said lands were unimproved and unoccupied, and that the defendants, holders of conveyances under the tax sale alleged to be void, reside beyond the limits of the State of Florida.

The answers admit the conveyance to Sir Edward J. Reed, but it is alleged to have been made by the Trustees of the Internal Improvement Fund of the State of Florida, and not by the State. The conveyance from Reed to the company is also admitted, but this is coupled with a denial that the company at the time of filing the bill was the owner of the lands, it being alleged that certain named defendants were the owners, deriving title under the tax sale alleged to be void.

As to the character and occupancy of the lands, the defendants answer as follows: "Defendants say they have no personal knowledge whether said lands are unimproved and unoccupied lands; therefore neither admit nor deny same of their own knowledge, but demand strict proof of the same. Defendants say that they are informed and believe, and so state on such information and belief, that some small portion of said lands are occupied by persons other than complainant or its members, officers or agents."

The tax assessor of Hamilton county for the years 1885 and 1886, testified that he did not know condition of lands in 1883 and 1884, but in 1885 said lands were unoccupied and unenclosed, except some few small

·parcels. He says: "I know a good many of the lands involved in this litigation; have been over a large :amount of same; most or nearly all of said land is va-·cant and unoccupied, uncultivated and unenclosed." On cross-examination he testified that forty acres in section 31, township 1 S., 15 E., and forty acres in section 5, township 1 N., 16 E., were occupied, and a Mr. Hill-house lived on a part of the land, he thought, in town-ship 1 north, R. 15, and he did not know of any other portions of the land being occupied.

The foregoing is substantially what the record shows as to the character and possession of the lands involved in this suit, and counsel for appellants insist that it shows an absence of jurisdiction in the Circuit Court to entertain the cause. On this point the cases of Sloan vs. Sloan, 25 Fla., 53, 5 South. Rep., 603; United States vs. Wilson, 118 U. S., 86; Ellis vs. Davis, 109 U. S., 485; Killian vs. Ebbinghaus, 110 U. S., 568; Fus-sell vs. Gregg, 113 U. S., 550; Hipp vs. Babin, 19 How., 271; 2 Story's Eq. Jur., sec. 700, note a; and 3 Pome-roy's Eq. Jur., sec. 1399, note 4, are cited. In the Sloan case it was held that the holder of a legal title ·in possession could invoke the aid of a court of equity to cancel a tax deed regular upon its face and made by ·statute *prima facie* evidence of the regularity of all the proceedings connected with the assessment and sale ·of the property, but which was, in fact, founded upon .a void assessment. In that case the complainants were in actual possession, by agent, of the land. In Patton vs. Crumpler, 29 Fla., 573, 11 South. Rep., 225, it was ·decided that where complainant's title was legal in its nature he must allege possession in himself in order ·to obtain the aid of a court of equity to remove a cloud from his title, and a failure to do so was fatal to the bill. In both of these cases, as well as in Haworth vs.

362 . SUPREME COURT.

Graham et al. v. Fla. Land & Mort. Co., Limited.—Opinion of Court.

Norris, 28 Fla., 763, 10 South. Rep., 18, the general rule that where a complainant has a legal title he must have possession before he can ask the aid of a court of chancery to remove a cloud from his title, was announced, but it was specially noted in two of the cases that a different rule as to possession might exist where it was shown that the lands were wild or unoccupied. There is no doubt about the rule that where the complainant has a legal title and the defendant is in possession, a court of chancery will not interfere, unless supervening equities are shown, but will leave the complainant to his remedy at law. The decisions cited by counsel from the Supreme Court of the United States maintain fully this rule, but they have no reference to removal of clouds from titles to wild or unoccupied lands, and need not be specially considered. In many cases where relief in equity has been refused in such cases because the complainant was out of possession and had an adequate remedy at law, the rule has been stated in such terms as to indicate that in all cases of legal title, possession on the part of the complainant is absolutely essential to maintain the bill. The language of the cases, however, should be construed in connection with the facts to which they relate. The foundation for the relief in equity in such cases is the want of, or inadequacy of the legal remedy. In the note to sec. 1399, 3 Pomeroy's Eq. Jur., referred to by counsel for appellants, it is said: "When the estate or interest is legal in its nature, the exercise of the jurisdiction depends upon the adequacy of legal remedies. Thus, for example, a plaintiff out of possession, holding the legal title, will be left to his remedy by ejectment, under ordinary circumstances. Where, on the other hand, a party out of possession has an equitable title, or where he

holds the legal title under circumstances that the law can not furnish him full and complete relief, his resort to equity to have a cloud removed ought not to be questioned." And in the note to Story also referred to we find this language, *viz:* "To remove a cloud upon the plaintiff's title to land, the plaintiff must under the common statutes when suing upon a legal title, show that he is in possession, or that the land is vacant; for it is said, if the defendant or another is in possession, the plaintiff has his remedy at law by ejectment or by writ of entry.    *    *    *    It is clear too that if the possession is vacant, the plaintiff may have his relief." There are statutes in some of the states providing that where a party is the owner of the legal estate, and others claim or assert some interest in the lands, a resort may be had to the court of chancery to settle the rights of the parties, and in such cases actual possession by the plaintiff is regarded as essential. Where such statutes exist it is generally held that they do not take away the general jurisdiction of a court of equity in the removal of clouds from title to real property. The cases cited by counsel for appellee from Illinois were decided under statutes. We have no such statute here, and the case before us must be decided under the general jurisdiction of the court of chancery in such matters. Relief in such matters, it is said, is granted by a court of chancery on the principle of *quia timet.* The best expression of this rule according to the decision in Dull's Appeal, 113 Penn. St., 510, is, "whenever a deed or other instrument exists, which may be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest, and he can not immediately protect or maintain his right by any course of

proceedings at law, a court of equity will afford relief by directing the instrument to be delivered up and cancelled, or by making any other decree which justice or the rights of the parties may require." In the application of this rule courts of equity have, independent of any statutory authority, held that where a complainant has the legal title to lands that are wild, unimproved and vacant, he may by alleging and showing such to be the case, invoke the aid of a chancery court to remove a cloud upon his title, although he has no other than constructive posssession as a result of his legal ownership. The decision in O'Brien vs. Creitz, 10 Kansas, 202, was that an action to quiet title may be maintained by the holder of the legal title when he is not in possession, if the real estate is vacant. The Supreme Court of Arkansas has held the same doctrine—Mitchell vs. Etter, 22 Ark., 178; Mathews vs. Marks, 44 Ark., 436. This view is also sanctioned by the following cases: Pier vs. City of Fond du Lac, 38 Wis., 470; Low vs. Staples, 2 Nevada, 209; Coolidge vs. Forward, 11 Oregon, 118. The rule established by these decisions is in harmony with the view that a court of chancery proceeds in such cases upon the theory of the inadequacy of the legal remedy.

The revenue act under which the lands in question were sold (Chapter 3413, laws of 1883), makes the tax deed *prima facie* evidence of the regularity of all the proceedings connected with the assessment and sale of the lands, and bars suits by the former owner to set aside a tax deed made in pursuance of any sale of lands for taxes unless commenced within three years after the record of such deed in the county where the lands lie. The wisdom of the rule announced by the decisions referred to, finds ample vindication in the facts of the case before us. Here a large body of

lands, consisting of some seventy thousand acres. scattered over a county, unimproved and vacant, has been sold for non-payment of taxes, and the holders of deeds to these lands under the tax sale reside beyond the limits of the State. So long as they do not take possession or interfere with the lands in a way to authorize a suit at law or a proceeding in equity to restrain them, there is no remedy afforded the owner to test the legality of the tax sale, and to require actual possession in such cases before resorting to chancery to remove a cloud upon the title, should one exist, would be in many cases to require an impossibility. The rule permitting the owner to maintain a bill in chancery to remove a cloud from the title to his wild or vacant lands, although he be not in actual possession of the same. is founded in wisdom and justice, and we accept it as the proper rule in such cases.

It is also contended by counsel for appellants that the record of the tax deed put the grantees therein constructively in possession of the lands, and they must be regarded under the statute as in possession as against the former owner. The statute applicable provided that "no suit or proceeding shall be commenced by a former owner or claimant, his heirs or assigns, or his or their legal representatives, to set aside any deed made in pursuance of any sale of lands for taxes, or against the grantee in such deed, his heirs or assigns, or legal representatives, to recover the possession of said lands, unless such suit or proceedings be commenced within three years after the recording of such deed in the county where the lands lie," with a saving of right to sue by certain persons under disability. The question of the bar of the statute as against the former owner is not involved in this case, as the bill to cancel the tax

deed was filed within three years after the record of the tax deed. The only inquiry needful here is whether or not the possession of the tax claimants was such that a legal remedy could have been maintained against them for possession. It is entirely clear that no actual possession was taken by the purchasers of the tax title, or their grantees, and the only possession they rely upon is such as was given by the record of the tax deed. The legal title, as a general rule, carries with it constructive possession when the lands are unoccupied, and in several states there are statutes authorizing the holders of patent titles to maintain ejectment against claimants under tax deeds when made evidence of title and recorded. Robb vs. Bowen, 9 Penn. St., 71; Myers vs. Coonradt, 28 Kansas, 211; Barrett vs. Love, 48 Iowa, 103; Monk vs. Corbin, 58 Iowa, 503; Knox vs. Cleveland, 13 Wis., 245; Dean vs. Earley, 15 Wis., 100. In Pennsylvania it was held that where the tax claimant was not in actual possession and the holder of the patent title could not sue to recover possession of the land, the statute did not run againss him until an adverse possession was assumed. Waln vs. Shearman, 8 Serg. & R., 357. Subsequently when the right to sue in ejectment for vacant land had been given, it was held that the statute began to run in favor of the tax claimant from the time the deed was executed to him, on the theory that he was constructively in possession of unoccupied lands from that date. Robb vs. Bowen, *supra;* Stewart vs. Trevor, 56 Penn. St., 374. Judge Cooley says: "These decisions have perhaps given effect to the statute as nearly as was possible consistent with fundamental rules of right." Constitutional Limitations, page 558. He also says: "If no provision is made by statute under which ejectment can be brought in the case of a vacant possession,

it would seem that neither claimant could be considered in law negligent, so as to render his claim the proper subject of a statute of repose, until possession was taken by his adversary; but if ejectment is allowed in such cases, then it may possibly be within the power of the legislature to declare that the title of that one of the parties who, constructively, is to be regarded as in possession, shall become absolute if not questioned by suit within the time by the statute limited for that purpose." There was no statute in this State at the time of this suit authorizing a former owner to maintain a suit of ejectment against a claimant under a recorded tax deed in the absence of actual possession, and as a consequence there was no legal remedy afforded him in such cases to test the legality of a tax deed. Fla. Savings Bank vs. Brittain, 20 Fla., 507. Under the statute referred to the actions that are barred in three years after recording the tax deed are not confined to those instituted for possession of the land, but a proceeding to set aside a tax deed is also included.

The right of the former owner to file a bill to remove a tax deed as a cloud upon title is recognized (Myers vs. Coonradt, *supra*), and where the tax claimant is not in actual possession of the land there is no legal remedy afforded, and no other way open to test the tax deed except by bill to remove it as a cloud, which, under proper allegations and proof, we think can be done.

From what has been said it follows that a complainant, in order to maintain his bill, should allege and prove, when denied, the fact that the land was wild and unoccupied. In the case before us we think the complainant was successful in this respect as to nearly all the lands described in the bill. The proof shows,

however, that forty acres in section 31, township 1 South, R. 15 E., forty acres in section 5, township 1, N., 16 E., and a part of the land in township 1 North, Range 15 E., were occupied, but it is impossible to tell from the evidence what forties in the sections named, or the part in the township and range mentioned, were occupied. While it clearly appears from the proof that some small portions of the lands were occupied, the court was left without the means of ascertaining the particular portions that were occupied; and hence no decree based upon the rights of the parties could have been made in reference to the lands left in such uncertainty. The court should, we think, have referred the case back to the master for the purpose of definitely ascertaining the portions of the lands that were occupied. Fuller vs. Fuller, 23 Fla., 236.

The collector of revenue of Hamilton county sold, at a tax sale in May, 1886, to the State of Florida, the entire body of lands described in the bill, and the certificates of purchase issued to the State were sold in November, 1887, to Graham & Hubb, who obtained thereon a tax deed from the clerk of the Circuit Court for Hamilton county and had it recorded in December of that year in said county. Subsequently Graham & Hubbell conveyed the lands to Gates, who sold to the other defendants named in the bill. The tax sale to the State and the subsequent deeds made thereunder, it is alleged, constitute a cloud upon complainant's title. One of the grounds impeaching the validity of the tax sale in 1886 is, that it was for the non-payment of the entire taxes assessed against said lands in 1885, for the years 1883, 1884 and 1885, and that at the time of said assessment and sale the taxes for the year 1883 had been paid to the State. The payment to the State is alleged to have been made as follows, *viz:* The

lands were assessed for taxes by the assessor of Hamilton county for the year 1883, and in April, 1884; a portion was sold by the collector of revenue for that county for the taxes assessed against the entire body to Baker and Blackwell, who paid to the collector the entire taxes due on the lands, and received from him a certificate of purchase for the portion bought by them; that subsequently complainant filed a bill in the Circuit Court of the United States for the Northern District of Florida, against Baker and Blackwell to cancel the sale to them, and upon their offering, in their answer, to surrender the certificate of purchase issued to them, on payment of the amount of taxes, costs and interest, it was accepted and the money paid to them. To this part of the bill the following answer is made: "Defendants admit that said lands were sold by the collector of taxes for said county of Hamilton in 1886, after due and legal notice of such sale for taxes of each of said years 1883, 1884 and 1885, and there being no other bidders therefor, were bid off by the collector for the State, as provided by law, and several certificates of said sales of said lands to the State were regularly issued to the State of Florida, but defendants deny that the taxes of 1883 on said lands had been legally paid previous thereto."

The defendants further deny in their answers that the lands were assessed for taxes in 1883 and sold in 1884 in such manner, or with such effect as to constitute a legal assessment and sale binding in law, and while an attempt was made to assess said lands and sell a portion of them for the taxes of 1883, they allege that said attempted assessment and sale were totally void and of no effect, and the payment thereunder amounted to no satisfaction of the taxes for 1883,

for the reason that the said lands were not assessed and sold in accordance with law.

Defendants further answer that a suit was commenced in the United States Circuit Court in April, 1885, by complainant against Baker and Blackwell and the clerk of the Circuit Court of Hamilton county, to enjoin the issuance of a tax deed on the certificate issued to Baker and Blackwell in 1884, and it is alleged that complainant in this said bill, upon the oath of its then managing officer, charged that the said assessment and sale were totally void, and that the payment of any tax thereunder would not prevent the State officials from proceeding to properly assess and collect the taxes of said year 1883 upon said lands, and also set out at large in said bill other grounds for avoiding said assessment and sale. That upon the allegations of this bill an injunction was issued restraining the said clerk of the Circuit Court from issuing a deed upon the said certificate of purchase by Baker and Blackwell, and this injunction, it is alleged, has never been dissolved, and a similar suit was commenced in the Circuit Court for Hamilton county in March, 1885.

It is admitted that Baker and Blackwell answered this bill, insisting that they were purchasers in good faith, and demanded the amount they had paid for taxes, and interest; but it is alleged that defendants had no personal knowledge of any payments to Baker and Blackwell by complainant on account of said certificate of purchase, and strict proof is demanded on this point.

It is further alleged that after said legal proceedings on the part of complainant and its assertions of the total invalidity and illegality of the assessment and sale of the lands for the year 1883, the tax assessor for

JANUARY TERM, 1894. 371

'Graham et al. v Fla. Land & Mort. Co., Limited.—Opinion of Court.

Hamilton county assessed said lands upon the tax books of that county in the year 1885 for the taxes of that year and the years 1884 and 1883, which it was his duty to do on account of the invalidity of the former attempted assessment for the year 1883, so asserted on oath by complainant through its officers and so treated by the courts. That if any payment was made to Baker and Blackwell for their certificate of purchase, it was some time after the said assessment in 1885, and it is alleged that if such payment was made, it was with the design and intent on the part of complainant thereby to defeat the collection of all the taxes upon said lands for the. years 1883, 1884 and 1885, as it is endeavoring to do by its bill in the present case.

The sale of the lands in 1886 for the taxes of 1883, 1884 and 1885, is alleged to have been regularly made upon due notice, and that the sale to the State was good. Also it is alleged that under the circumstances complainant can not be permitted now to assert that by the alleged purchase of the certificate from Baker and Blackwell the same operated as a payment of the taxes for 1883, in such sense as to render illegal the subsequent assessment and sale for the taxes of 1883, 1884 and 1885, and it is insisted that the taxes for 1883 were not thereby paid. The answers make reference to assessment rolls and notices of tax sales filed as exhibits therewith. Copies of the assessment rolls, or portions of them, for the years 1883 and 1885, and the notices and reports of the tax sales of lands in the years 1884 and 1886, as well as certified copies of the bill and answer in the suit commenced in the United States Circuit Court against Baker and Blackwell and the clerk of the Circuit Court of Hamilton county, were introduced in evidence and are before us.

The assessment roll for 1883 shows that the lands in question were assessed to Sir Edward J. Reed, and are described on the roll by sections, half sections, quarters sections, quarter-quarter sections and lots, but no valuations are placed opposite the several descriptions of the lands, and no amounts of taxes for state and the various county purpoees are set down in separate columns opposite said descriptions.   The total number of acres assessed, together with the aggregate valuation of the same, appears on the roll, and also the total aggregate amounts of taxes due thereon for state and the various county purposes are given.   The notice of the tax sales in the year 1884 recites that the lands described, or so much thereof as will be necessary will be sold on a day mentioned to pay the amounts due for taxes set opposite the same, together with the costs of advertising, and then follows a description of the lands assessed to Sir Edward J. Reed, as appears on the tax roll, footing up the total number of acres, with the aggregate amount of taxes on the same.   The report of sales in 1884 for non-payment of taxes for the year 1883, made by the collector of revenue for Hamilton county, indicates that Baker and Blackwell became the purchasers of about forty-nine thousand acres of the lands in question for an amount sufficient to pay the total taxes for state and county purposes assessed against the entire body of land, and the proof shows that they were the purchasers of that quantity of the lands for all the taxes due thereon, and upon payment of their bid received a certificate of purchase for said lands from the collector of revenue.   It is also shown that the collector of revenue, in settlement with the Comptroller, accounted for and paid over the amount of money received from Baker and Blackwell at said tax sale.   In 1885 the lands were again assessed for

JANUARY TERM, 1894.        373

Graham et al. v. Fla. Land & Mort. Co., Limited.—Opinion of Court.

the years 1883, 1884 and 1885, and were sold in 1886 to the State for the non-payment of the taxes of the three years mentioned. An examination of the assessment roll for 1885 and the notice of the tax sales in 1886 renders it clear that the lands were sold in 1886 for the entire taxes assessed for the years 1883, 1884 and 1885. The answers admit that this was the case. In making the assessment in 1885 for the three years mentioned the assessor acted under instructions from the Comptroller, who testified that he had the lands assessed for the year 1883 because he had heard that the owner was raising some question as to the validity of the sale in 1884, and in order to secure the taxes for 1883 in the event the amount paid by the purchaser at the tax sale had to be refunded, the lands were again assessed for 1883 on the roll for 1885. The State has never refunded the amount paid on the sale to Baker and Blackwell, nor has any application ever been made for the same, so far as the record shows.

Counsel for appellants contend that the assessment in 1883 was so irregular and defective as to amount to no assessment at all, and that they could be assessed for that year in 1885, and sold under Section 26, Chapter 3413, laws of 1883. This section provides that "if any assessor, when making his assessment, shall discover that any land in his county was omitted in the assessment roll of either or all of the three previous years, and was then liable to taxation, he shall, in addition to the assessment of such land for that year, assess the same separately for such year or years that it may have been so omitted, at the just value thereof in such year, noting distinctly the year when such omission occurred; and such assessment shall have the same force and effect as it would have had if made in the year the same was omitted, and taxes shall

be levied and collected thereon in like manner and together with the taxes of the year in which the assessment is made; but no lands shall be assessed for more than three years arrears of taxes, and all lands shall be subject to such taxes omitted to be assessed, into whatsoever hands they may come.'' The case of Overing vs. Foote, 43 N. Y., 290, is cited on this point. The statute under which that decision was made provided, in effect, that when it should appear to the assessor that any land or property legally liable to taxation has been omitted in the assessment roll, he should, on the application of three tax-payers, enter said land or property on the roll for the current year at the valuation of the year in which said tax was omitted, or, if not then valued, at the valuation of the preceding year, in a separate line from the valuation of the current year. Upon petition of the assessor that such land or property was not taxed in the preceding year, the board of supervisors of the county or city at the next annual meeting were required to levy a tax on the same at the rate *per centum* of the tax imposed upon land or property in the preceding year. Certain rents accruing from perpetual leases were assessed in 1864 to a person not the owner, and upon proper petition this property was assessed in 1865 to the true owner for that year and the preceding year, and a tax imposed thereon by the board against the owner for 1864 as well as 1865. It was held that under the statute this property was omitted in the assessment roll for 1864, and could be assessed to the true owner in 1865 for the preceding year. In that case no taxes had been paid in any way on the property for 1864, and it is evident that the condition upon which a levy could be made for a preceding year, under the statute, was that the property had not been taxed.

for that year. In the case now before us the assessment of the lands in 1883 was unquestionably irregular and defective, and we would have no hesitancy in declaring a sale made upon such an assessment to be void and ineffective to convey a valid title. The validity of the sale in 1884 is not, however, the question with which we are to deal now. We are to determine whether or not the taxes on the lands in question for the year 1883 were discharged by the receipt of the amount assessed, under the tax sale proceedings in 1884. The assessment under which those proceedings were had shows that the lands were listed by accurate descriptions as one entire tract at an aggregate valuation, and that the taxes for state and county purposes were set down as separate aggregate amounts against the lands. The State proceeded to enforce by sale the collection of the taxes thus assessed, and received from the purchaser at the sale the full amount of the taxes due.

Upon what principle can these lands be resold for the same taxes? If it can be done at all, it must be by virtue of the 26th section of Chapter 3413, the revenue act in force when the sale of 1886 was made. The design of the section referred to was to impose upon lands subject to taxation and omitted from the tax rolls of any or all of the three years past at the time of any annual assessment, their just proportion of the burdens of government by being put on the roll at the just value thereof in the year or years they were omitted. The statute contemplates that the lands shall have been omitted from the assessment roll of some one of the three previous years, and that the taxes thereon shall not have been paid. After providing for the assessment of the omitted lands and declaring that the assessment of them in a subsequent year shall have

the same effect as if made in the year they were omitted, it is enacted, "but no lands shall be assessed for more than three years' arrears of taxes." If the taxes properly chargeable to lands in any year have been paid or satisfied, such lands are not in arrear of taxes for that year, within the meaning of the statute mentioned. It is our opinion that where the assessor has described lands upon the assessment roll so that they can be readily ascertained and identified, and the county commissioners have levied the amount of taxes properly chargeable to such lands according to the valuation fixed thereon, and the amount of such taxes is placed upon the roll, the collection of such taxes by voluntary payment on the part of the land-owner, or by public sale of the lands for non-payment of taxes, would be an exhaustion of the right of the State under the statute to demand the same taxes again, although the proceedings in reference to the listing and selling the lands may be so irregular and defective as to pass no title to the purchaser at the tax sale thereunder. If the taxes were paid, as a matter of fact, into the proper treasury, it matters not by whom or how, the lien of the State for the same was thereby discharged, and the statute referred to afforded no authority to proceed *de novo* to assess and collect the same taxes again. Jones vs. Dils, 18 W. Va., 759; Montgomery vs. Merredith, 17 Penn. St., 42; Iowa Railroad Land Co. vs. Guthrie, 53 Iowa, 383; Mason vs. Chicago, 48 Ill., 420; 2 Blackwell on Tax Titles, Sections 820, 821, 822.

By the 5th section of Chapter 3685, approved June 2nd, 1887, the Comptroller, when proven to him that lands had been sold for unpaid taxes when the taxes on the same had been duly paid, or that lands were not subject to taxation at the time of the assessment on which they were paid, was authorized to cancel the

certificate of sale, and, upon application, to refund
to the holder of the certificate, when surrendered,
the amount of taxes received by the State, and
the county commissioners were require to refund
likewise the amount received by the county. This
statute had not been passed when the re-sale was made
in 1886, but was in force in 1887 when the certifi-
cates of sale issued to the State were sold to Graham
& Hubbell. By the terms of this act the amounts re-
ceived for taxes were required to be refunded only
when the lands at the time of assessment were not sub-
ject to taxation, or the taxes had been paid, at the
time of sale. When the lands in question were assessed
in 1883 they were subject to taxation, nor had the
taxes thereon been paid when they were sold in 1884.
By this sale the State and county received all the taxes
due on the lands for the year 1883, and there was no
law requiring these taxes to be refunded. Kaehler vs.
Dobberpuhl, 56 Wis., 480. The former owner could
not, under the statute, recover possession of the lands
without paying to the party from whom recovery was
had all the taxes paid on the land at the time of sale,
together with al taxes paid since said sale, with eight
per cent. interest thereon. After the lands had been
assessed and sold in the manner stated, and the amount
of taxes due thereon had been received, it was not in
the power of the Comptroller to disregard such a sat-
isfaction of the State's demand for the taxes, and pro-
ceed under the statute to collect the taxes again. We
do not say that an assessment could not have been so
defective as that proceedings *de novo* might have been
had under the section of the statute referred to, in
order to enforce the collection of unpaid taxes on the
lands, but it is essential, we think, that the lands
should have been in arrear for taxes before they were

subject to be back assessed, and in the case before us it is shown that all the taxes which the State could collect for the year 1883 on the lands in question had been paid into the treasury, and hence the subsequent proceeding to collect taxes for that year was without authority of law.

Before the expiration of the year for redemption, after the sale in 1884, appellee filed a bill in the Federal Circuit Court against the purchasers at that sale and the clerk of the Circuit Court of Hamilton county to enjoin the issuance of a tax deed on the certificate of purchase. The assessment for 1883 was alleged in this bill to be void and insufficient to authorize a valid sale of the lands, and that the purchasers at said sale did not acquire a right to a tax deed on their certificate of purchase. The bill alleged the sale to be void on several grounds: That the lands were assessed as one contiguous or compact body, while they were in many separate tracts and in different portions of the county, and the assessor did not enter on the assessment roll a description of each tract of land separately, with the cash value set opposite the same, nor was the amount of taxes in dollars and cents for the various state and county purposes placed opposite each separate tract, but the entire body was assessed as one tract at an aggregate valuation, and the various amounts of taxes were given as aggregate sums; that under the name of Sir Edward J. Reed, imperfect and insufficient descriptions of the lands were made upon the assessment roll without stating whether the townships were north or south of the base line, or whether the ranges were east or west of the Tallahassee meridian, and that the said lands were situated on both sides of said base line; that the assessor did not visit and inspect said lands before affixing a valuation thereon, and he was

not personally acquainted with them, but valued them all at one dollar per acre without regard to the true valuation thereof, and that said valuation was far beyond the real value of said lands and was excessive. The bill also contained the following averments: That "a receipt for the taxes against the lands so partially and imperfectly described would not protect your orator's lands from taxes assessed against them under a proper description and a valid assessment, and the State of Florida could not pass a valid title to your orator's said lands under such erroneous description and assessment should a sale thereof be made or attempted."

The levy of any tax for school purposes was alleged to be without authority of law, and that notwithstanding the imperfect and insufficient description of the lands and the void assessment of the taxes, the collector of revenue of Hamilton county proceeded to sell the same at a tax sale in 1884, and that Baker and Blackwell claimed to buy the same; that they agreed to take 49,500 acres of the land, or thereabouts, and this number of acres was knocked off to them to be taken from the south-east corner of the lands, but as said lands were assessed as one entire body, and are separated into different tracts over the county, no right to any specific portion thereof was acquired at said sale. This sale was also alleged to be void because the notice of sale did not contain a proper description of the lands and was not published the length of time required by law. In reference to redeeming the lands, the bill contained the following, *viz:* "That your orator, though denying the regularity and legality of said assessment, and the proceedings thereunder, yet to avoid and escape the delay, expense and trouble of litigation incident to a contest, desires and offers to

redeem certain portions and tracts of its lands, to-wit: all of sections three and four in township one, north of range fifteen east, by paying taxes that may be due thereon when ascertained. Your orator further offers to redeem by parcels all of its lands in said county which were sold on the 7th day of April, A. D. 1884, for taxes." The foregoing is sufficient to indicate the scope and purpose of the bill, without going into further details in reference to its allegations.

The answer of Baker and Blackwell controverted many of the grounds of irregularity alleged, and concluded with an offer to surrender and transfer their certificate of purchase acquired at the tax sale to the company upon payment of the amount expended in the purchase of the lands, with costs and interest. The proof shows that this offer was accepted, the money paid by appellee, and the litigation terminated.

It is urged by counsel for appellants that appellee is estopped by the allegations in its bill filed in the Federal Court, to which reference is here made, from asserting that the taxes on the lands in question for 1883 were paid by reason of the tax proceedings and sale in 1884. We think this contention is without merit, and that there is no principle of estoppel to prevent appellee from maintaining its present suit. It is true, as a general rule, that a party will not be permitted to assume inconsistent positions in legal proceedings, and that when he has successfully made an allegation in pleading in reference to a fact, he will be estopped to deny the truth of such allegation in a subsequent action between the same parties involving the same transaction. The bill filed by appellee in the Federal Court was against the purchasers at the tax sale in 1884 and the clerk of the Circuit Court of Ham-

JANUARY TERM, 1894. 381

Graham et al. v. Fla. Land & Mort. Co., Limited.—Opinion of Court.

ilton county, for the purpose of preventing the issuance of a tax deed on that sale, but it was not alleged, nor did appellee assume the position, that the state and county taxes on the lands in question for the year 1883 were not discharged by the payment to the tax collector under the sale of the lands in 1884. This sale is alleged to be void and the assessment defective, but the effect of the payment of the taxes to the tax collector on the right of the State to re-assess the lands again was not involved. The position assumed by appellee in its bill filed in the Federal Court is not inconsistent with the case made in its present bill, and there is no principle of estoppel to apply. It is not claimed that appellee is estopped by any other principle except that in reference to inconsistent positions which it is insisted is exhibited by appellee in its two bills. The case then is, that part of the taxes for which the lands were sold in 1886 to the State had been paid, and we have a sale where part of the tax was legal and a part was illegal. The rule is well established that a valid title to real estate can not be obtained at a sale for taxes, a part of which is legal and a part illegal. Where the sale is for an entire tax, a part of which is legal and a part illegal, the void portion vitiates the entire sale. Hardenburgh vs. Kidd, 10 Cal., 402; Dogan vs. Griffin, 51 Miss., 782; Gamble vs. Witty, 55 Miss., 26; McLaughlin vs. Thompson, 55 Ill., 249; Riverside Co. vs. Howell, 113 Ill., 256; Wallingford vs. Fiske, 24 Maine, 386; People vs. Hagadorn, 104 N. Y., 516. The decision in Rhodes vs. Sexton, 33 Iowa, 540, was controlled by statute. Counsel for appellants insist, however, that the taxes for the years 1883, 1884 and 1885 were severable, and that under the Constitution and laws of Florida where a part of the taxes is legal it will sustain the deed. The cases of the City of Pen-

sacola vs. Louisville & Nashville R. R. Co., 21 Fla., 492, and Town of Kissimmee vs. Cannon, 26 Fla., 3, 7 South. Rep., 523, are cited. These cases hold that where a petition is filed under the statute to annul an assessment on the ground that a part is illegal the whole assessment will not be set aside if the illegal items can be separated from the assessment list without impairing the parts that are valid. And the present Constitution provides expressly that no relief can be granted against the payment of any tax that may be illegal, or illegally or irregularly assessed, until payment be made of the legal portion that may be due. The cases referred to do not sustain the position that a sale for taxes, a part of which is legal and a part illegal, is good. There is a distinction between such a case and where relief is asked against an assessment, a part of which is good and it can be separated from the bad. Where this can be done relief will be granted only for the illegal part on condition that the legal tax be paid. But where a sale has been made for both good and bad there is no way of apportioning the property sold, to the good or bad portion of the tax, and the entire sale is void. See authorities *supra*.

The chancellor decreed the cancellation of the tax deed obtained by Graham & Hubbell and the conveyances executed by them to the lands embraced in the tax deed, upon condition that appellee pay the taxes on the lands for 1884, 1885, and all subsequent taxes paid by the purchasers under the tax sale. Counsel for appellants insist that the court should have decreed the payment of the amount of purchase money paid by the purchasers for the lands, instead of the taxes expended on the same. It is not claimed that the amount required to be paid by appellee on account of

taxes on the lands was not sufficient to cover all that had been paid by the holders of deeds under the tax sale, but the point insisted on is that these purchasers should be made whole by receiving back all the purchase money they paid out on account of the land. There is no authority for this position. A tax purchaser buys under the operation of the rule *caveat emptor*, and at common law gets nothing unless he secures the land itself. Judge Cooley says "he takes all the risks of his purchase, and if he finds in any case that he has secured neither the title he bid for, nor any equitable claim against the owner, the state may, if it see fit, make reparation itself; but it has no more authority to compel the owner of the land to do so than to exercise the like compulsion against any other person." Constitutional Limitations, page 533; *Ibid*, pages 475, 476. Such a purchaser is not, therefore, a *bona fide* purchaser in the strict technical sense of the term as understood in the law. Provision has been made requiring the owner upon recovering the land, under certain conditions, to refund the taxes that have been paid on the same by the tax claimant, but nothing beyond this has been provided for such purchaser as a claim against the land owner.

The distribution of the money required to be paid iuto the registry of the court by the complainant on account of taxes paid by defendants subsequent to the tax sale was the subject of further action on the part of the court, and the rights of the respective claimants thereto can be protected.

After answers filed by defendants in the Circuit Court the bill was dismissed by order of the clerk on following rule day for want of replication, and on petition to the judge this order was vacated and com-

plainant allowed to reply. Subsequently leave was granted to complainant to withdraw its replication and amend its bill, which was done, and the cause proceeded on the amended bill.

An order extending the time for taking testimony was also granted on application of complainant. The ground for extending the time for taking testimony was stated to be on account of an epidemic of yellow fever prevailing in the city where complainant's solicitors resided. The orders of the court referred to are assigned as error here, but they relate to matters resting in the sound discretion of the court, and unless it appears that such discretion has been abused the action of the court will not be reversed. There is nothing in the record to show an abuse of discretion in making the orders complained of, and hence the case should not be reversed on account of them.

The decree is reversed, with directions to the court to ascertain in accordance with its practice what portions of the lands were occupied in section 31, township 1 south, range 15 east, section 5, townip 1 north, range 16 east, and in township 1 north, range 15 east; and that upon the ascertainment of this, a final decree be entered in accordance with this opinion. Decree to be entered accordingly.