JOHN WOODFORD ET AL., APPELLANTS, VS. SEIGMORE ALEXANDER ET AL., APPELLEES.

1. When a complainant has a legal title to real estate, he must have possession before he can invoke the aid of a court of chancery to remove a cloud from his title, unless the land is wild and unoccupied, in which case the bill may be maintained although complainant has no other than constructive possession resulting from legal ownership, but it is essential to show and allege in such case that there is no such possession of the land by another claimant as will authorize a possessory remedy at law for it.

2. Possession of land is denoted by the exercise of acts of dominion over it, in making the ordinary use and taking the ordinary profits of which it is susceptible in its present state, such acts to be so repeated as to show that they are done in the character of owner, and not of an occasional trespasser.

3. Two conditions must concur to give a court of equity jurisdiction to enjoin a mere trespass on real property; first, complainant's title must be admitted or legally established; and, second, the trespass must be of such a nature as to cause irreparable damage not susceptible of complete pecuniary compensation. The inadequacy of the legal remedy is the foundation and indispensable prerequisite for the interference of chancery in such cases. This was the rule prior to the adoption of the act of June 4th, 1889.

4. In cases of destruction or injury of timber standing on land it is not enough to obtain an injunction to simply allege that such destruction or injury will amount to irreparable damage to the land and loss to the owner. It must appear that the timber is of such peculiar value to the estate as that its destruction or injury will so affect the uses and purposes for which it was designed as to make its loss an irreparable injury to the owner. If adequate compensation can be made in money, the remedy is at law.

5. Where a decree *pro confesso* has been prematurely and improperly entered, and application is promptly made by a defendant to set it aside, he should not be taxed with the costs of the suit up to the time of the application, where no blame attaches to him.

Appeal from the Circuit Court for Marion county.

The facts in the case are stated in the opinion of the court.

*Miller & Spencer*, for Appellants.

No appearance for Appellees.

MABRY, C. J.:

Appellees, husband and wife, residents of Kings county, State of New York, filed a bill in the Circuit Court for Marion county, Florida, in April, 1889, against John Woodford, of West Winstead, State of Connecticut, and O. H. Edwards, of Marion county, Florida, appellants here. The bill alleges substantially that Fanny Alexander was the true owner by direct deeds from the Trustees of the Internal Improvement Fund of the State of Florida, of the east one-half of the N. W. one-half and the N. E. one-half of section 35, Tp. 14 S., R. 23 E., situated in Marion county, and was such owner at the time of a certain tax sale referred to in the bill; that the lands were what are commonly known as swamp and overflowed lands, their chief value, and in fact their only value, consisted in the cypress timber growing thereon, and said lands were all forest, in the swamp bordering on the Ocklawaha river. That in felling the timber it was usual to girdle the trees by axe chops, and when they died, to cut them down, saw them up into lumber and shingles, which were of great value in the market.

By an amendment to the bill, it was further alleged that while complainants were non-residents of the State, and never actually lived upon the lands, because they were covered with water, and unfit for the habitation of man, yet they have at all times had an agent in Marion county, who had the possession and control of

the lands by running off trespassers, preventing the cutting of timber, paying taxes, and exercising such other acts of ownership as was usual with wild forest lands. It was then alleged that Woodford, through his agents and servants, of whom Edwards was foreman, was girdling or deadening large quantities of said timber for the purpose of hauling the same to the mill to be sawed into lumber and shingles, and unless restrained he would continue his depredations upon the lands until the same ceased to be of any value; that the cypress timber cut from the land was lying on the ground, and defendants were preparing to remove and would remove the same unless restrained by the court; and that Woodford was a non-resident, and complainants were not advised whether he was solvent or insolvent, or whether the damages could be collected for the said trespass. That Woodford pretended to justify his unlawful acts and trespasses under and by virtue of a pretended tax deed to the lands for the taxes assessed and levied thereon for the year 1885; the tax deed is alleged to be illegal and ineffective to convey any title to the land, although by the laws of Florida it is made *prima facie* regular and sufficient, and casts a cloud upon complainants' title to the land, and impairs their market value. The bill sets out particularly various irregularities, omissions and defects in the tax sale proceedings upon which the tax deed is predicated, showing its invalidity, but there is no contention here that the grounds of avoiding the tax deed are not sufficient for that purpose, and the allegations of the bill in reference to them need not be stated.

Complainants further allege that they were non-residents of the State during the year 1885, but had an agent in the State to pay the taxes on said lands, and that if the taxes for the year 1885, for the non-payment

336 SUPREME COURT.

John Woodford el al. v. Seigmore Alexander et al.—Opinion of Court.

of which said lands were sold, were not paid, it was owing to some accidenc or mistake on the part of said agent, and should it be developed that said taxes were not paid, complainants were willing to pay the same, and in their bill offered to bring into court any sum of money that had been paid on account of said taxes, together with the interest thereon, as provided by law.

The prayer of the bill is to have the tax deed cancelled as a cloud upon the complainants' title, and that Woodford, his agents and servants, and Edwards as foreman, be enjoined from cutting the timber on said lands, or from removing any trees that had been cut, or in any manner interfering with said lands. There was also a prayer for process.

An injunction was granted, as prayed for in the bill. Service by publication was made as to Woodford, returnable the 25th of May, 1889, and upon his failure to appear, a decree *pro confesso* was on that date entered against him by the clerk. On the 29th of that month an application was made by Woodford to have the decree *pro confesso* vacated, and to be permitted to demur or answer. The court opened the default, but required Edwards to pay the costs of the suit up to that date. Both Edwards and Woodford demurred to the bill, the grounds of the demurrer being, first, the bill is without equity, second, Edwards was an unnecessary and improper party, third, the bill showed Woodford to be in possession of the land claiming title, and that the complainants were out of possession, fourth, the acts set up in the bill are mere trespasses, and no irreparable damage is shown, and, fifth, a court of equity has no jurisdiction to enjoin waste, the defendants being in possession claiming title. The demurrers were heard and overruled by the judge of the Third Circuit, to whom application was made by peti-

tion sworn to, stating that the judge of the Fifth Circuit was unable to act on account of absence from the Circuit. The order of the judge of the Third Circuit overruling the demurrers recites that proof was made of the absence of the judge of the Fifth Circuit from the State. An appeal was entered from the order requiring Woodford to pay the costs of the suit upon opening the default, and from the order overruling the demurrer.

The grounds insisted on in brief of counsel for appellants are, that the court erred in requiring Woodford to pay costs upon opening the default; that the court had no jurisdiction of the cause to remove a cloud from the title to the land involved, as complainants had no possession; that a court of equity will not enjoin a mere trespass where no irreparable injury is shown; and that Edwards was an unnecessary and improper party. The case arose prior to the act of June 4, 1889, sec. 1469, R. S.

Commencing with the second objection, that the court was without jurisdiction to remove a cloud because complainants were out of possession, the general rule is, that where a complainant has a legal title he must have possession before he can invoke the aid of a court of chancery to remove a cloud from his title to real estate. This rule was announced in this court in the cases of Sloan vs. Sloan, 25 Fla. 53, 5 South. Rep. 603; Haworth vs. Norris, 28 Fla. 763, 10 South. Rep. 18, and Patton vs. Crumpler, 29 Fla. 573, 11 South. Rep. 225. In the case of Graham vs. Florida Land & Mortgage Co., 33 Fla. 356, 14 South. Rep. 796, we held that the basis for such relief in equity is the want of, or inadequacy of, a legal remedy in cases where a deed or other instrument of writing exists

which may be vexatiously or injuriously used against a party after the evidence to impeach, or invalidate it is lost, or which may cast a cloud over his title, and he can not immediately protect his interests by legal proceedings. In the application of this rule it was decided that where a complainant had the legal title to lands that were wild, uncultivated and unoccupied, he may invoke the aid of chancery to remove a cloud upon his title, although he has no other than constructive possession resulting from legal ownership. The bill in the case before us alleges that the lands were swamp and overflowed, in the forest, and unfit for the habitation of man. The constructive possession, resulting from legal ownership, of such lands, is certainly sufficient to sustain a bill to remove a cloud from the title thereto, in the absence of any possession by another claimant. It is contended that the bill in the present case shows that Woodford, by his agents and servants, was in possession of the lands at the time the bill was filed, under claim of title under a tax deed made by law *prima facie* evidence of a valid conveyance. The bill alleges that at the time it was filed, Woodford was, by his agents and servants, girdling or deadening large quantities of the timber for the purpose of hauling it to the mill to be sawed into lumber and shingles, and that unless restrained he would continue his depredations upon the lands until they ceased to be of any value, and that he justified his unlawful acts and trespasses under a pretended tax deed admitted to be *prima facie* good, but alleged to be void in fact. If the entry upon the lands, under a claim of title *prima facie* good, for the purpose of deadening the timber and converting it into lumber and shingles, and the continuance of such acts until all the timber was removed, can be construed as such

acts of possession as to authorize an action of eject-
ment for the possession of the lands, the court of
chancery had no jurisdiction to entertain a bill on the
part of complainants to remove a cloud from the title.
As above stated, the authority of the court to act is
dependent upon the absence of an adequate legal rem-
edy. In Williams vs. Buchanan, 1 Iredell 535, S. C.
35 Am. Dec. 760, it was decided that "possession of
land is denoted by the exercise of acts of dominion
over it, in making the ordinary use, and taking the
ordinary profits, of which it is susceptible in its pres-
ent state—such acts to be so repeated as to show that
they are done in the character of owner, and not of
an occasional trespasser." It is stated in note on
page 841, vol. 18 Am & Eng. Ency. of Law, that it was
decided in Tredwell vs. Reddick, 1 Ired. 56, that the
entry upon, ditching and making roads in a cypress
swamp, cutting down trees and making shingles out of
them, denotes a possession of the swamp; and in By-
num vs. Carter, 4 Ired. 310, that the occupation of pine
land, by annually making turpentine on it, is a pos-
session of such lands. We have not been able to ex-
amine the cases referred to in the note mentioned, as
they are not accessible to us. Considering the charac-
ter of the lands, as shown by the bill, the case here is
close, but, in our judgment, the possession of the lands
by Woodford was such as to authorize an action of
ejectment against him and his agents on the part of the
complainants. The only possession of which the lands,
in their ordinary use, were susceptible was going on
them and removing the timber, and this Woodford did,
as disclosed by the bill, as owner under the tax deed.
We have adopted the rule that where the lands are
wild and unoccupied, a complainant may invoke the
aid of chancery to remove a cloud from the title, al-

though he has no 'other than constructive possession resulting from legal ownership, but it is essential to allege and show that there is no such possession of the lands by another claimant as will authorize a possessory remedy for them at law. Graham vs. Florida Land and Mortgage Co., *supra*. The bill before us shows that Woodford claimed the lands under a tax deed made *prima facie* effective to convey the title, and the acts alleged to have been done by him appearing to have been done in the character of owner, and amounting to such possession as to authorize a proper suit at law, there was no equitable jurisdiction shows, so far as the removal of the tax deed as a cloud is concerned.

In Carney vs. Hadley, 32 Fla. 344, 14 South. Rep. 4, the general rule was stated, that two conditions must concur to give a court of equity jurisdiction to enjoin a mere trespass on property; first, the complainant's title must be admitted, or legally established; and, second, the trespass must be of such a nature as to cause irreparable damage, not susceptible of complete pecuniary compensation. The inadequacy of the legal remedy is the foundation and indispensable prerequisite for the interposition of chancery in such cases. In that case the trespass sought to be enjoined was injury to trees standing on land. An allegation was held insufficient that stated the trees to be valueless except for turpentine and timber, and without them in a condition to produce turpentine and timber, the land would be of little value, and that the acts of the defendants in extracting turpentine from the trees greatly lessened their value as timber producing trees.

In the bill we are considering there is no sufficient basis for invoking the injunctional power of the court on the grounds of a multiplicity of suits or insolvency.

of the defendants. Woodford was alleged to be a non-resident, but whether solvent or insolvent, was not known, and nothing was stated as to the solvency of Edwards, a resident of Marion county. The bill must stand upon its allegations as showing an irreparable injury not susceptible of adequate pecuniary compensation. We said in the Carney-Hadley case: "It is safe to say that even in cases of the destruction of timber by cutting and removing from the land, it is not sufficient in order to obtain an injunction to simply allege that such cutting and removal amount to irreparable injury to the land, and a great damage and loss to the owner. In addition, it must appear that the trees are of such peculiar value and importance to the estate as that their destruction or injury will so affect the uses and purposes for which it is designed so to make their loss an irreparable injury to the owner. If adequate compensation can be made in money, the remedy is at law." The present bill does not, in our judgment, show that complainants did not have an adequate remedy at law for the injury threatened, and that their loss was irreparable within the meaning of the rule on the subject. Stevens v. Beekman, 1 Johns. Chy. 318; Jerome vs. Ross, 7 Johns. Chy. 315, S. C. 11 Am. Dec. 484; Cause Perkins, 3 Jones Eq. 177, S. C. 69 Am. Dec. 728; Green v. Keen, 4 Nd. 98. The result is that the court erred in overruling the demurrers to the bill of complaint.

We are also of the opinion that the court should not have taxed Woodford with the costs of the suit when the default was opened. We fully recognize the rule that the appellate court will not interfere with the orders of the chancellor made in the exercise of his judicial discretion, unless it appears that such discre-

tion has been wrongfully or abusively exercised.. Myers v. McGahagan, 26 Fla. 303, 8 South. Rep. 447.

The decree *pro confesso* was not only entered without any certificate required by the statute, but it was. entered by the clerk on the return day of the process. In Johnson v. Johnson, 23 Fla. 413, 2 South. Rep. 834, it is said: "In Lente v. Clark, 22 Fla. 515 (1 South. Rep. 149), this court, constructing rule 44, held that a decree *pro confesso* can not be taken for want of appearance on the rule day to which the process is returnable, and can not be taken till the next succeeding· rule day, and then, not for want of appearance, but for want of plea, demurrer or answer." The decree *pro· confesso* was prematurely and improperly entered, and the application having been promptly made to set it aside, should have been granted without the payment of costs. All the costs should abide the final determination of the case, and provision can be made· on the final hearing for the costs already paid, in accordance with equity and right.

The decree is reversed, and an order will be entered. accordingly.