C. M. BROWN ET AL., APPELLANTS, VS. ANTONIO SOLARY ET UX., APPELLEES.

1. The basis for equitable interference in the removal of a cloud from the title to real estate is that a deed or other instrument, apparently valid, but void in fact, may be vexatiously or injuriously used against the rightful owner, after the evidence to invalidate it has been lost, and the owner being in possession, can not immediately protect his right by any legal proceeding. In such case a court of equity will grant relief and direct the deed or instrument to be delivered up and cancelled.

2. A court of equity grants relief by injunction against a trespass on real estate when the threatened injury can not be adequately compensated in damages at law, or where under the circumstances of the case injured party has no adequate remedy at law. The foundation for the jurisdiction in such cases is, in general, the irreparable nature of the injury, the inadequacy of pecuniary compensation, the destruction of the estate in the character in which it has been enjoyed, or the prevention of a multiplicity of suits.

3. The question of title and possession enter into the consideration in cases of trespass as well as when an instrument is sought to be removed as a cloud upon title, and in cases of trespass the complainant's title must be admitted, or legally established, and the nature of the injury must be irreparable. The decision in the case of Woodford vs. Alexander, 35 Fla. 333, 17 South. Rep. 658, is disapproved. The application of the law to the facts of that case was erroneous, and the decision should not be followed.

4. The mining and taking of phosphate rock from the soil of land valuable chiefly on account of the phosphate amounts to a destruction of the estate in the character in which it has been enjoyed, and the injury resulting therefrom is of such an irreparable nature as to authorize a court of equity to enjoin it on proper bill by the real owner.

5. When a court of equity has, by virtue of its original or concurrent jurisdiction, cognizance of a case for one purpose, it will proceed to a complete adjudication of the entire case, even to the settlement of purely legal rights which otherwise would be beyond the scope of its powers.

C. M. Brown et al. v. Antonio Solary et ux.—Syllabus.

6. Where a court of equity has acquired jurisdiction to enjoin a tresspass in digging and taking phosphate from the soil of land, it also has the authority to decree an account of the phosphate already taken from the soil and the damages resulting from the trespass.

7. A bill is not multifarious on the ground of a joinder of two separate and distinct causes of action when an injunction, within the jurisdiction of the court to grant, is asked for, and also an account of the damages resulting from the act sought to be enjoined is prayed.

8. A bill is not multifarious on account of the joinder of parties defendant where the object of the suit is single, and there is one general point in issue rendering the interest common to all the defendants.

9. Where the object of the suit is single, and it is shown that some of the defendants have interests in distinct questions growing out of the suit, such defendants are necessary parties in order to conclude the entire matter.

10. T. acquired a tax title to land and conveyed an undivided half interest to M.; T. and M. subsequently conveyed their entire interest in one part of the land to S., S. and P., and their entire interest in the other part to B.; a bill was filed by the true owner of the land against S., S., P., B. and others alleging that the tax deed was void for specified reasons, and praying an injunction and account against B. and the other defendants who had entered upon the land under color of the void tax deed and committed an irreparable injury: *Held*, That T. and M , who had parted with their entire interest in the land, who were in no way shown to be connected with the trespass on the land, and against whom no fraud was charged, or relief asked, were not necessary parties.

11. In determining the sufficiency of a plea, every fact stated in the bill and not denied by the plea must be taken as true, and the facts stated in the plea must be considered as true.

12. To a bill filed by the owners in fee of land, alleging that the defendants, with design to defraud and injure complainants, had entered upon the land under color of a void tax deed, and had committed irreparable injury by digging and taking from the soil phosphate of great value and quantity, the exact value of which could not be ascertained without an accounting, and praying for an injunction and account of the phosphate dug;

a plea was interposed alleging simply that defendants were not committing the trespass and injury alleged at the time the bill was filed: *Held,* That the plea was no sufficient answer to the bill, and was rightfully overruled.

Appeal from the Circuit Court for Marion county.

### STATEMENT.

Appellees filed a bill in chancery against Charles M. Brown, E. W. Agnew, D. J. Gillen, the Marion Phosphate Company, a corporation organized under the laws of Georgia, George J. Baldwin, the Silver Springs, Ocala & Gulf Railroad Company, a corporation organized under the laws of Florida, James H. Smith, Norman R. Smith and J. P. Pulcifer, the material allegations of which are that complainants were seized in fee of the E. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ of sec. 26, township 16, S. of R. 18 E., situate in Marion county, the title to which being derived as follows: Vincent Botto obtained a patent from the United States government for the land in October, 1883, and thereupon took possession, and in June, 1884, conveyed the land by warranty deed to Louisa Mazza, who subsequently, and before the filing of the bill, was married to Antonio Solary. That on the 4th of March, 1888, an instrument of writing in the form of a tax deed, purporting to convey the land to William T. Tompkins, was inscribed upon the records of deeds for Marion county, a copy of the instrument being filed as a part of the bill, and on the 19th of May following Tompkins and wife, claiming an interest in the land solely by virtue of said instrument of writing, executed a formal conveyance, purporting to operate as a quit-claim deed, to Joseph B. McMurtry for an undivided half interest in said land. On the 2d of

August, 1888, Tompkins and wife and Joseph B. Mc-Murtry executed a deed purporting to convey all that part of said land west and northwest of the Silver Springs, Ocala & Gulf Railroad to the defendants James H. and Norman R. Smith and J. P. Pulcifer. On the 10th of December, 1889, Tompkins and wife and Joseph B. McMurtry executed a deed purporting to convey all that part of said land east of the Silver Springs, Ocala & Gulf Railroad to defendant Charles M. Brown. Copies of the deeds from Tompkins and wife to McMurtry, Tompkins and wife and McMurtry to the Smiths and Pulcifer, and Tompkins and wife and McMurtry to Brown, are filed as exhibits to and parts of the bill of complaint.

The tax deed to Tompkins purports to have been made upon a sale of the lands in 1887 for the non-payment of taxes assessed for the year 1886. The bill alleges various grounds impeaching the validity of the tax deed, but as it is not contended here that the grounds alleged are not sufficient, if true, to avoid the deed, they are not specially mentioned.

The bill further alleges that the defendants Brown, Agnew, Gillen, Baldwin, the Marion Phosphate Company, and the Silver Springs, Ocala & Gulf Railroad Company, combining and confederating to injure and defraud complainants, did severally, jointly and unlawfully enter upon the land, under color of the pretended tax deed and divers other pretended claims or rights unknown to complainants, and had been and were then mining said lands for phosphate therein, and had taken and were taking phosphate from the soil thereof, of great value, the exact value of which complainants were unable to learn without an accounting under the order of the court; that phosphates were

being taken in great quantities, and the lands were valuable chiefly for the presence of the phosphates therein; that said defendants had committed and were committing great and irreparable injury to the land, and were destroying the value thereof, and the trespass, injury and damage had not only been and was irreparable, but had been and was continuous in its nature, and complainants had no adequate relief except through an accounting and the process of injunction.

The special prayers of the bill are for an injunction restraining the defendants from entering upon the land and mining phosphate thereon; that the rights of complainants in the land be recognized, validated and established by decree of the court; that the tax deed be set aside and declared void; that an account be decreed of the phosphate dug and taken by defendants from the land, and of the damage done to the land by the defendants, and that they be required to pay the several amounts found to be due.

Defendants Brown, Agnew, and the Marion Phosphate Company appeared and demurred to the bill. The grounds of the demurrer are: 1. On the face of the bill complainants were not entitled to any relief in a court of equity. 2. The bill shows that complainants have a clear, adequate and complete remedy at law. 3. The bill is multifarious. 4. The bill is vague, indefinite, contradictory and repugnant. 5. The copy of the tax deed filed with the bill shows that such deed is void on its face, and insufficient to create a cloud upon complainants' title. 6. There is a defect of parties in omitting to sue William T. Tompkins and J. B. McMurtry. 7. The bill fails to sufficiently allege possession of land, so as to entitle complainants to

maintain the suit. 8. The bill in its introductory part fails to set forth the names and places of abode of defendants of complainants. 9. The bill is otherwise defective and insufficient. The court overruled all the grounds of the demurrer, except the fifth and eighth, which were sustained, and the order of the court on the demurrer recites that thereupon complainants amended the bill by inserting the residences, and a clerical defect as to the copy of the tax deed was corrected, and lease given the said defendants to answer or plead by rule day in the following month.

The said defendants filed pleas as follows: That it was not true, as alleged, that defendants or either of them were at the time of filing the bill mining said land; that it was not true that at that time phosphates were being taken therefrom in great quantities, or that the defendants or either of them were at that time committing great and irreparable injury to the land, or any injury whatever; that it was not true that said lands were then being injured continuously or otherwise. 2. At the time of filing the bill complainants were in the lawful possession of the land, and that neither of the defendants was in possession of any part thereof; that neither of the defendants was then committing any tresspass or injury to the land, and no mining whatever was then being done by any person or corporation whatever, and that no phosphate was then being taken from the land, and no injury was being done to the realty or any part of it.

Upon argument the pleas were held to be insufficient, and were overruled.

Appeal was entered from the order overruling the first, second, third, fourth, sixth, seventh and ninth

grounds of the demurrer, and also from the order over-ruling the pleas.

*R. L. Anderson*, for Appellants.

*A. W. Cockrell & Son*, for Appellees.

MABRY, C. J.:

The grounds of the demurrer that were sustained involved only formal defects that were supplied at the hearing of the demurrer. The alleged defect as to the *prima facie* sufficiency of the tax deed extended only to the absence of a seal on the copy filed with the bill, and this was simply a clerical oversight in the clerk in not affixing the seal to the copy. The other grounds of the demurrer were considered and expressly overruled, with leave to demurrants to answer or plead to the bill. The amendment of the mere formal defects having been made on the hearing of the demurrer, the objection to the bill on their account was then removed, and defendants are entitled to have the adverse ruling of the court on the other grounds reviewed without demurring again after the amendment was made. The first and second grounds overruled question the right of complainants to any relief in equity on the allegations of their bill. In connection with these two grounds we consider the seventh, that the bill does not sufficiently allege possession of the land on the part of complainants.

The case made for complainants, briefly stated, is that they were seized in fee of the land in question; that one Tompkins acquired a pretended tax deed to it, and, claiming thereunder, conveyed by quit claim deed an undivided half interest to one McMurtry; that Tompkins and McMurtry conveyed that portion of the

land west and northwest of the Silver Springs, Ocala & Gulf Railroad to defendants James H. Smith, Norman R. Smith and J. P. Pulcifer, and that portion east of said railroad to defendant C. M. Brown; that the tax deed to Tompkins was void on account of certain specified defects in the tax sale proceedings; and that defendants Brown, Agnew, Gillen, Baldwin, the Marion Phosphate Company, and the Silver Springs, Ocala & Gulf Railroad Company, confederating to injure and defraud complainants, had unlawfully, severally and jointly, entered upon the land under color of said pretended tax deed, and other pretended claims unknown to complainants, and had been and were mining the land for phosphate, and had taken and were taking phosphate from the soil, of great value, the exact value complainants were unable to learn without an accounting. It was also stated that phosphates were taken in great quantities, and the land was valuable chiefly on account of the phosphate, and that defendants had committed and were committing great and irreparable injury to the land, thereby destroying its value; the tresspasses and injuries being not only irreparable, but had been and were continuous. The special relief asked is an injunction against the mining of the land and trespasses thereon, that complainants' rights in the land be established by decree of the court, that the tax deed be set aside and declared void and that an account be taken of the phosphate dug and removed from the land, and also of the damage done to the land.

If the basis for a resort to equity rested solely upon the ground of removing the tax deed as a cloud on complainants' title, the possession alleged would probably not be sufficient. The allegation is that com-

plainants were seized in fee, without any allegation
that the land was wild and unoccupied.. Sloan vs.
Sloan, 25 Fla. 53, 5 South. 603; Haworth vs. Norris,
28 Fla. 763, 10 South. Rep. 18; Patton vs. Crumpler,
29 Fla. 573, 11 South. Rep. 225; Graham vs. Florida
Land & Mortgage Co., 33 Fla. 356, 14 South. Rep. 796.
Other equities than the removal of the tax deed as a
cloud upon title are claimed in support of the bill.    It
asks for an injunction against mining phosphate in the
soil of the land alleged to be valuable chiefly on ac-
count of the phosphate therein, and for an account of
the phosphate already mined.    A demand is also made
for an account of the damages to the land by reason of
the alleged trespass thereon.    The basis for equitable
interference in the removal of clouds from title is that
a deed or other instrument, apparently valid, but void
in fact, may be vexatiously or injuriously used against
the rightful owner, after the evidence to invalidate it
has been lost, and the owner, being in possession, can
not immediately protect his right by any legal pro-
ceeding.    In such case a court of equity will afford
relief, and direct the deed or instrument to be deliv-
ered up and cancelled.    The court grants relief in cases
of trespass where the threatened injury can not be ad-
equately compensated in damages, or where, under the
circumstances of the case, the injured party has no ad-
equate remedy at law.    The foundation for the juris-
diction of equity to enjoin a trespass is, as stated in
the recent case of Wiggins & Johnson vs. Williams,
36 Fla. 637, 18 South. Rep.——, the probability of ir-
reparable injury, the inadequacy of pecuniary com-
pensation, the destruction of the estate in the charac-
ter in which it was enjoyed, or the prevention of a
multiplicity of suits.    In order to successfully invoke

the aid of a court of equity in such a case, two conditions must concur: First, the complainant's title must be admitted or legally established; and, second, the trespass must be of such a nature as to cause irreparable injury. Carney vs. Hadley, 32 Fla. 344, 14 South. Rep. 4. The alleged injury to the realty in the case before us results from the mining and taking of phosphate from the soil itself, and we entertain no doubt that such an act is so destructive of the estate as to give the court jurisdiction to enjoin it. The old rule limiting the relief in equity to waste was departed from in cases of mining in Flamang's Case, where a wrong-doer was working minerals in complainant's land, and it was regarded as destructive of the estate itself. This case is cited in Mitchell vs. Dors, 6 Vesey Jr. 147; Hanson vs. Gardiner, 7 Vesey Jr. 305; Thomas vs. Oakley, 18 Vesey Jr. 184. In Mitchell vs. Dors, an injunction was granted where defendant begun to take coal in his own soil, and worked into the land of complainant, and in Thomas vs. Oakley, an injunction and account were applied against a trespasser by exceeding a limited right to enter and take stone from a quarry, on the ground that it was a destruction of the inheritance. In 2 Beach on Injunctions, sec. 1155, it is stated that "the digging and removing of ore from a mine without permission of the owner is a trespass which will be readily enjoined, because it reaches to the very substance and value of the estate, and goes to the destruction of it as a mine." The questions of title and possession enter into the consideration in cases of trespass, as well as when an instrument is sought to be removed as a cloud upon title. The rule formerly in use in England was not to enjoin a defendant in the use and enjoyment of land when the title was in dis-

pute, but to leave the party to his remedy at law. The Lord Chancellor stated in Pillsworth vs. Hopton, 6 Vesey Jr. 51, he remembered being told from the bench early in life that "if the plaintiff filed a bill for an account and an injunction to restrain waste, stating that the defendant claimed by title adverse to his, he stated himself out of court as to the injunction." This remark does not correctly state the rule now in force, as it is plain that in cases of serious and irreparable injury going to the destruction of the substance of the estate, the court has for a long time granted injunctions, and in some cases when the title was in litigation, to preserve the property from destruction pending legal proceedings. West vs. Walker, 3 N. J. Eq. 279, note A; Duvall vs. Waters, 1 Bland Chy. 569, S. C. 18 Am. Dec. 350; Erhardt vs. Boaro, 113 U. S. 537, 5. Sup. Ct. Rep. 565; Bacon vs. Jones, 4 Mylne & Craig, 433. Should the bill state possession in defendant under such a claim of title as to show in him, *prima facie* right, without sufficient impeachment of it, the complainant would have no status in a court of equity, but should it appear that the defendant had entered upon the land for the purpose of removing the substance of the soil under a claim wholly void, and this should be admitted upon the record, the court would have jurisdiction. There would be no legal question to be settled as to defendant's title when its invalidity is admitted, and he would be placed in such case in the position of a trespasser. A trespass on reality, in general, may be defined to be an injury to, or use of, the land of another, by one who has no right or authority whatever. Duvall vs. Waters, *supra*. It is not necessary to enquire to what extent the court will go when the question of title is raised by an an-

swer, as no such question is presented in the present record. The views expressed in Woodford vs. Alexander, 35 Fla. 333, 17 South. Rep. 658, are not entirely in harmony with what is here expressed. The objects of the bill in that case were the cancellation of a tax deed alleged to be void, and the prevention of the cutting and removal of timber on swamp land. After a more thorough examination of the subject we have become convinced that there was an erroneous application of the law to the facts of that case, and that the effect of the decision as a guide should be counteracted. The opinion in that case was written by the member of the court preparing this one, and he is convinced that when the value of land consists chiefly, if not entirely, in the timber thereon, its destruction amounts to irreparable injury, within the rule on the subject. The entry upon land of another, valuable only for the timber thereon, under a claim wholly void, and the destruction of such timber, amount to such an irreparable injury as to authorize the court of chancery to interfere on application of the true owner. A distinction may exist between mining land and the destruction of timber thereon, but we are convinced that an erroneous application of the law was made to the facts in the Woodford case. In the present case the bill alleges that phosphate of great value, the exact value the complainants were unable to learn without an accounting, was mined and taken from the soil, and an account of the phosphate is asked. In our opinion the allegations of the bill as to the rights of complainants and the character of the alleged injury are sufficient to give the court jurisdiction.

8

Another ground of objection, and it seems to be the principal one insisted on, is that the bill is multifarious. It is contended that there is a joinder of two separate and distinct causes of action, and in fact a joinder of an equitable cause—the injunction—with the demand for an account of the phosphate and damages —the latter cognizable exclusively at law. It is a fundimental doctrine of the court of equity that when, by virtue of its original or concurrent jurisdiction, it has acquired cognizance of a case for one purpose, it will proceed to a complete adjudication, even to the settlement of purely legal rights which otherwise would be beyond the scope of its authority. In speaking of the right of trial by jury guaranteed by the Constitution, we said in Wiggins & Johnson vs. Williams, *supra*, that it might safely be stated that in all those cases in which a court of equity, prior to the adoption of the Constitution guaranteeing a trial by jury, and by virtue of its general or concurrent jurisdiction for one purpose, had proceeded to a complete adjudication of the entire case, even to the settlement of legal rights which otherwise would be beyond its powers, it can not be successfully claimed that the guaranty of trial by jury exists as to the legal right. To say nothing of the feature of account in the present case, it is clear that the irreparable nature of the injury alleged—going to the destruction of the estate itself—brings it within the general jurisdiction of the court to grant the injunction, and having jurisdiction for this purpose, the entire case may be adjudicated.

It is also insisted that there is a misjoinder of parties, in this, that the defendants Brown, Agnew, Gillen, Baldwin, the Marion Phosphate Company, and the Silver Springs, Ocala & Gulf Railroad Company

are alleged to have committed the trespasses on the land, and James H. Smith, Norman R. Smith and J. P. Pulcifer are not shown to have had any connection therewith. The last named defendants have not demurred or otherwise objected to the suit, so far as we are advised, and it is certain that the object of the suit against those first named is single. It is alleged that they, jointly and severally, conspiring to injure and defraud complainants, entered upon the land and mined phosphate, and we do not see upon what ground they can object to the joinder of the other defendants. Bermes vs. Frick, 38 N. J. Eq. 88 note. In Bauknight vs. Sloan, 17 Fla. 284, it was held that where the object of the suit was single, and there was one general point in issue rendering the interest common to all the defendants, the objection of multifariousness will not prevail. Where the object of the suit is single, and it is shown that some one or more of the defendants have interests in distinct questions growing out of the suit, such defendants are necessary parties in order to conclude the entire matter. Ritch vs. Eichelberger, 13 Fla. 169. It appears that the Smiths and Pulcifer are interested in a part of the land by reason of the pretended tax deed, and that the other defendants, trespassing upon the entire tract, claim under color of the same instrument. Its validity is a question in which all the defendants are interested.

The only other ground of the demurrer demanding notice is, that Tompkins and McMurtry are necessary parties. The former was the grantee in the tax deed, and after quit-claiming a half interest in the land to the latter, they conveyed their entire joint interests to the respective parties named. No fraud is charged against Tompkins and McMurtry, or either of them;

they have parted with all their interest in the land, are not connected in any way with the mining operations, and no relief is asked against them. We do not regard them as necessary parties to this suit. Ritch vs. Eichelburg, 13 Fla. 169; McDonald vs. Russell, 16 Fla. 260; Fridenburg vs. Wilson, 20 Fla. 359.

The plea was overruled, and it is claimed that the court erred in this ruling. In determining the sufficiency of the plea we must accept every fact stated in the bill, and not denied by the plea, as true, and the facts stated in the plea as true. Wilson vs. Fridenburg, 19 Fla. 461. It is not questioned that this is the correct rule. The pleas allege that complainants were in possession at the time of filing the bill, and that neither of the defendants was in possession. It is also alleged that defendants were not at the time of filing the bill mining the land, that phosphate was not then being taken therefrom in great quantities, or in any quantity, that defendants, or either of them, were not then committing great and irreparable injury, or any injury whatever, to the land, or that the land was then being injured continuously or otherwise. The statements of the bill not in conflict with the foregoing allegations must be considered as true. The invalidity of the tax deed is conceded, and also that defendants, with the design of defrauding and injuring complainants, had entered the land, under color of said tax deed, and dug and carried away phosphate in great quantities and value, the exact value of which could not be ascertained without an accounting. The plea shows such possession in complainants as to authorize the court to cancel the void tax deed, but the bill is defective, as we have seen, in not sufficiently alleging possession, and according to strict rule complainants

may not be able on their bill to invoke this equity in their favor. The bill was ample, however, to give the court jurisdiction to award an injunction and call for an account. The defendants entered upon the land without legal right, and with the purpose, as admitted upon the record, of defrauding complainants, and had committed serious and irreparable injury. The defendants were not committing the injury at the moment of time when the bill was filed, but they do not disclaim their purpose to continue in the future to carry out the formed design to take phosphate out of the soil. Their past conduct justifies a well-grounded apprehension of further injury, and the court would be justified, without further showing, in permanently enjoining them from trespassing upon the land. Upon a proper bill for an injunction the court will make a complete decree and give satisfaction, and not compel a complainant to sue at law. Jesus College vs. Bloom, 3 Atkyns, 262. The bill further asks for an account and discovery of the phosphate taken from the land, and which could not be ascertained without an accounting. In our judgment the pleas make no sufficient answer to the bill. Let the decrees be affirmed.