D. H. McMILLAN AND W. C. JACKSON, PARTNERS DOING BUSINESS AS D. H. McMILLAN & CO., APPELLANTS, VS. Z. K. WILEY, APPELLEE.

1. To the extent of conferring jurisdiction on the court of chancery to enjoin the trespasses mentioned in section 1469 of Rev. Stats. by a mere trespasser without color of right or authority, said section is constitutional and can be enforced; but to the extent of awarding an account for damages for the trespasses mentioned therein and decreeing their payment, the same is unconsititutional and can not be enforced.

2. Independent of Section 1469 Rev. Stats. the court of chancery had no jurisdiction to order an account to be taken of dam-

ages for a mere trespass on timbered lands, the same being cognizable at law, and, in so far as said section undertakes to confer such jurisdiction upon the court of chancery, it impairs the right of trial by jury according to the course of the common law and secured by the constitution.

3. Where the court of chancery prior to the adoption of our constitution, had jurisdiction in a case, independently of any statute, for any purpose, it also had authority to decree the taking of an account and the payment of damages in such case; but the court of chancery had no inherent jurisdiction to enjoin a mere trespass on timbered lands, and though the legislature may properly confer the power to enjoin in such cases, yet it can not, along with the delegation of such new power, confer upon the court of chancery jurisdiction to adjudicate damages for such trespasses, and neither can the parties confer such jurisdiction by their silence or consent.

4. A jurisdictional matter will be considered by this court, even though the same may not be questioned by the pleadings or expressly presented.

This case was decided by Division A.

Appeal from the Circuit Court for Lake County.

*Alfred St. Clair-Abrams,* for Appellants.

No appearance for Appellee.

## STATEMENT.

The appellee, Z. K. Wiley, filed his bill in chancery in the Circuit Court of Lake county on the twenty-fifth day of January, 1898, against D. H. McMillan and W. C. Jackson, partners doing business under the firm name and style of D. H. McMillan & Co., who are the appellees in

this court, alleging in substance therein as follows: that complainant was seized in fee of the W. $\frac{1}{2}$ of lots 2 and 3 and all of lot 4, in section 25, township 17 S., R. 27 E. containing one hundred and fifty acres, more or less, situate in Lake county, the title to which was derived by complainant from a warranty deed from John S. Banks and wife, dated June 18th, 1883, which was duly recorded, chain of conveyances from the United States of America; the said Banks deriving title thereto through an unbroken that complainant had been in undisputed and peaceable possession of said land from the date of the execution of said deed by said Banks up to the time of the trespass committed thereon by defendants, exercising such acts of ownership over said land as are usually exercised by owners of unimproved timber lands; that all of said land was timbered land and that its value consisted principally in the timber thereon, the same being heavily timbered with pine trees of good size and quality, and that the same had never been cut over, the trees remaining virgin forests; that on or about the first day of January, 1898, the defendants, who were then, and still were at the date of the filing of the bill, engaged in the business of making turpentine, entered upon said land, without the knowledge or consent and without authority of law, and proceeded to box and scrape the pine trees standing thereon for the purpose of making turpentine; that complainant had been informed and believed that said defendants had boxed and scraped a great portion of the timber on said land and had made turpentine therefrom in large quantities and had removed the said turpentine from the land; that defendants were still engaged in boxing and scraping the trees on said land for the purpose of making and removing still further quantities of turpentine, and that

they were injuring the timber on said land and destroy-
ing the value thereof and exposing the same to destruction
by fire; that defendants had greatly injured the value of
said land and the timber thereon; that their said tres-
passes had caused complainant great damage, and that
defendants had no title whatever to said land, but were
simply trespssers thereon. The prayer of the bill was
for an injunction, an account, general relief and for pro-
cess.

On the seventh day of March, 1898, the defendants filed
their answer to the bill, in which they admitted that
their employes had entered upon complainant's land and
boxed some of the timber thereon, but averred that the
same was done through accident, and not from design to
trespass thereon; that the first knowledge defendants
had of the trespass upon said land was upon an investiga-
tion made after the filing of complainant's bill; that after
learning that they had boxed some of complainant's land
by mistake they immediately communicated with his at-
torney, offering to pay the full market price then pre-
vailing for such timber used for turpentine purposes;
that they still were ready, willing and anxious to make
full reparation to complainant for said timber at the
usual and well established rates, said timber having a
well established market price, and that upon learning that
their employes had through mistake entered upon com-
planant's land they immediately ceased to box or cut any
of said timber and had taken every precaution against
fire; that, as complainant had never notified defendants
or made any demand upon them for compensation for the
boxing of said timber, as the trespass was unintentional

and committed through accident or mistake, and as defendants stood ready and willing to pay complainant a reasonable and proper price for said timber cut through mistake, they ought not to be subjected to any further costs of suit and the expense of accounting.

On the fourth day of April, 1898, the complainant filed his replication to the answer.

On the twenty-fifth day of May, 1898, an order was made by the chancellor below referring the cause to a special master to take the evidence therein and report same to the court.

On the tenth day of February, 1899, said special master filed his report together with the testimony taken before him by the complainant and defendants, reciting therein that all of said testimony was taken on the ninth and tenth of February, 1899.

Certain further tsstimony was afterwards taken in said cause on behalf of the complainant before the chancellor. Almost all of said testimony, however, so taken both before the special master and the chancellor was as to the amount of damages.

On the twenty-third day of March, 1899, a final decree was rendered in said cause in which the chancellor found the equities to be in favor of the complainant, and in which it was ordered, adjudged and decreed that the defendants pay to the complainant the sum of $607.37 as his damages, together with the costs of suit, which were taxed therein at $58.85, and that execution issue therefor as at law. From this final decree defendants have entered an appeal to this court, assigning some thirteen errors. However, in view of the conclusion which we have reached, it becomes unnecessary to consider said several errors in detail.

SHACKLEFORD, J. (*after stating the facts*.)

It will be observed, as set forth in the foregoing statement, that the relief sought by the complainant in his bill was to restrain the defendants from further trespassing upon his land and that an account might be taken of the damages to the complainant from the trespasses already committed, and that the defendants be required to pay to the complainant the amount shown to be due upon such accounting. This suit was based upon Chapter 3884 of the laws of Florida, acts of 1889, which was brought forward into the Revised Statutes as section 1469 and reads as follows:

"*Against destruction of timber*—Courts of chancery shall entertain suits by any person claiming to own any timbered lands in this State, to enjoin trespasses on such lands by the cutting of trees thereon, or the removal of logs therefrom, or by boxing or scraping the said trees for the purpose of making turpentine, or by the removal of turpentine therefrom; and in such suits the said courts shall cause an account to be taken of the damage to the complainant from any of said trespasses, before or after the institution of the suit, and decree the payment of the amounts shown to be due upon such accounting, by the defendant or defendants, and may appoint receivers of logs or timber claimed to have been cut from said lands." The original title of this act was "An act to extend the powers of the courts of chancery in this State," and undoubtedly it was intended to confer upon courts of chancery certain powers in addition to those already possessed. This section has been before this court several times for construction. In the case of Reddick v. Meffert,

32 Fla. 409, 13 South. Rep. 894, it was held to be constitu·
tional and valid in so far as it undertook to confer upon
courts of· equity the power to enjoin trespasses on tim·
bered lands, but· in that case the validity of said act was
not questioned to any extent, and no accounting was
sought.    In the case of Wiggins v. Williams, 36 Fla. 637,
18 South. Rep. 859, after a full discussion of the question
it was held, as set forth in the 12th and last  headnote,
that "to the extent of conferring jurisdiction on the court
of chancery to enjoin the trespasses mentioned in the se ·-
ond section of the act of 1889, *supra,* by a mere trespasser
without color of right or authority, the act can operate;
but to the extent of awarding an account for damages for
a mere trespass cognizable at law, and in respect to which
the court of equity had no jurisdiction independent of
statute, it impairs the right of trial by jury according to
the course of the common law and secured by the consti·
tution."    The reasons for the conclusion reached upon
this point are so fully and clearly set forth in the opinion
rendered in said last cited case that we deem it  unnec-
essary to say more than that we fully approve thereof and
think the conclusion correct.    To the same effect are the
cases of Hughes v. Hannah, 39 Fla. 365, 22 South. Rep.
613, and Louisville & N. R. Co. v. Gibson,  43  Fla.· 315, ·
31 South. Rep. 230.

As there seems to be some misapprehension upon the
part of some members of the bar as to the effect of the
decision in the case of Brown v. Solary, 37 Fla. 102, 19
South. Rep. 161, we will state that, properly understood,
there is no conflict whatever  between the  conclusions
reached in that case and in the case of Wiggins v. Wil-
liams, *supra.* The case of Brown v. Solary, *supra,* was not

based upon said section 1469 of Rev. Stats., and the suit could not have been brought thereunder, as said section relates solely to trespasses committed on *timbered* lands, while in said case the trespasses sought to be enjoined were the entering upon the lands and *mining* and removing phosphate therefrom. For the reasons stated in the opinion in the last cited case a court of equity had jurisdiction independent of any statute, and, having so acquired jurisdiction for one purpose, it also had the authority to decree the taking of an account of the phosphate already taken from the soil and the damages resulting from the trespass. This was the case also in the cases of Griffin v. Orman, 9 Fla. 22, and Rivers v. Summers, 33 Fla. 539, 15 South. Rep. 319. The court of equity in all these cases had *jurisdiction* of the *subject-matter*, and an incidental issue arising in the case which the party had the right to a trial of by jury did not take away such general jurisdiction, and the right to have the incidental issue tried by jury becomes in such a case a *personal privilege* that may be waived by the party entitled thereto, and does not affect the *jurisdiction* of the court over the case, but in the case at bar the court of equity has no *jurisdiction* over the subject-matter of *damages* for trespass on land, the legislature, as has been held in the cases cited, can not confer it, and neither can the parties confer it by their silence or consent. Brown on Jurisdiction, Sec. 3. In the case of Wiggins v. Williams, *supra,* as in the instant case, the only reason a court of equity could take jurisdiction at all was by virtue of the authority conferred by the statute. This marks a wide distinction between the two classes of cases. To hold that a court of equity has the power under the statute in a suit

based upon it to cause an account to be taken of the damage and to decree its payment would have the effect of depriving the party of the benefit of the provisions in our constitution which were designed to preserve and guarantee the right of trial by jury in proceedings according to the course of the common law as known and practiced at the time of the adoption of the constitution. In the instant case it would seem that no injunction, either temporary or perpetual, was ever granted by the chancellor, and that the only relief given in the final decree was damages for the alleged trespasses, which were based upon a so-called accounting. As we have just seen, in so far as said statute undertakes to confer upon a court of equity the authority to cause an account to be taken of shown to be due upon such accounting, said statute is unconstitutional and can not be enforced. It follows from what has been said that the decree must be reversed, and for that reason it becomes unnecessary for us to consider the various errors assigned or to express any opinion upon the testimony. It may be that the unconstitutionality of that portion of the statute upon which we base the conclusion we have reached has not been very aptly presented to this court by counsel for appellants, but, be that as it may, under the principle laid down in Trustees I. I. Fund of Florida v. Gleason, 39 Fla. 771, 23 South. Rep. 539, it is proper for us to consider a jurisdictional matter, even though the same may be not questioned by the pleadings or expressly presented.

The decree must be reversed, and it is so ordered, and the cause remanded for such further proceedings as may be in consonance with equity practice and not inconsistent with this opinion, the appellee to pay the costs of this appeal.