314 So.2d 792 (1975)
KOGER PROPERTIES, INC., Appellant,
v.
Fred E. ALLEN and Hallie J. Allen, His Wife, Appellees.
No. W-379.
District Court of Appeal of Florida, First District.
June 13, 1975.
Rehearing Denied July 22, 1975.
*793 H.O. Pemberton of Keen, O'Kelley & Spitz, Tallahassee, for appellant.
Stanley Bruce Powell of Douglass & Powell, Tallahassee, for appellees.
McCORD, Judge.
This is an appeal by Koger Properties, Inc., from a final judgment entered pursuant to a jury verdict and an order for remittitur which was accepted by appellees (plaintiffs below). The verdict was in the amount of $27,600 compensatory damages and $37,500 punitive damages. The trial court, on motion of appellant for a new trial, ruled that the record does not support the $27,500 verdict for compensatory damages but does support compensatory damages in the amount of $17,410 and ordered a remittitur of $10,190 or, in the alternative, a new trial.
This is a negligence action brought against appellant and the City of Tallahassee for water damage to appellees' home property which resulted from the flooding thereof by rainwater runoff from appellant's newly constructed office building complex located across Hendrix Road from appellee's property. The jury found for the City but against appellant.
Appellant contends that it had a legal right to drain surface water from its property into a ditch on the east side of Hendrix Road where it exceeded the capacity of the ditch at that point and overflowed across the road flooding appellee's house and yard; that, as the owner of the higher adjoining land, it had a right to discharge the surface water naturally coming on its land onto the lower land of appellee provided that it did not change the water flow from its natural course.
From the evidence, it appears that prior to appellant's construction of the office complex on its property, it went before the City of Tallahassee for a change in zoning which would permit such use. Appellees *794 attended the zoning hearing for the sole purpose of determining whether, if the zoning were changed to allow construction of appellant's office complex, the drainage from the complex would be handled in such a way that it would not injure appellees. At the hearing, appellant's representative assured appellees that everything had been taken care of so that they would not be injured.
Before the construction, the Koger property was undeveloped land covered with vegetation and trees. During the 20 years the appellees had lived on their property prior to the Koger development, they had no water problems. Koger's engineer, Wayne Coloney, who was employed to design the drainage, testified as follows regarding the terrain of the Koger property before the construction work was begun.
"It's very rolling terrain with the ridge running approximately perpendicular to Apalachee Parkway in a north-south direction several hundred yards east of and approximately parallel to Hendrix Road. All of the water which falls west of that ridge runs downward and ran downward to Hendrix Road prior to construction of Koger Properties' development. Hendrix Road slopes sharply downward from Apalachee Parkway and then rises again as you go south on Hendrix Road. In other words, the Cates and Allen properties lie approximately at the low point of Hendrix Road as you come south from Apalachee Parkway. The drainage from the property, which is now Koger Executive Center, originally flowed down to Hendrix Road and was carried under Hendrix Road by a culvert, which, through our research, has been there at least thirty years. We have been unable to find exactly when it was constructed, but we do have evidence to indicate that it was in place 30 years ago and was probably in place for a number of years prior to that."
The Cateses owned the property adjoining the Allens to the north. The Koger property is across Hendrix Road west of the Allen and the Cates properties. The 24-inch culvert referred to in the foregoing quotation took the water from the ditch on the Koger side of the road across to the ditch on the Allen side of the road. Another ditch on the Cates property took the water away in a westerly direction.
Mr. Coloney further testified that Koger and the City Engineer knew from the very beginning that the existing culvert underneath Hendrix Road and the existing ditch running westward on the Cates property were inadequate to carry the water which would be discharged at that point by Koger's storm sewer. Koger and the City agreed that Koger would pipe the water under Hendrix Road in a 36-inch pipe at which point the City would enlarge and improve the existing ditch on the Cates' property to carry off the water. The whole plan was complicated by the Cateses refusal to provide an easement for the City to enlarge their ditch.
Koger went ahead with the construction of the office complex and drainage system without keeping the City advised of their progress and of when they would need the improvement to the City drainage. They built large office buildings and large parking areas which gathered the rainwater, most of which had previously been absorbed by the earth, and channeled it through storm sewers terminating with a storm sewer opening directly across the street from and in front of the Allen's home. The whole project was completed by Koger without any consideration of the fact that the City had not completed arrangement for carrying the water away from that point.
With the rains, a deluge of water was projected with great force from the terminus of Koger's storm drainage system at the point directly across the road from appellees' home. The water overflowed the ditch, ran across the road in a small river and flooded the property of the Allens causing great damage to their home, a cottage *795 on their property and their yard. The Allens' son described the damage from the deluge as follows:
"Well, about the biggest thing was that the walls have cracked in various corners of the house. The ceiling, the roof started leaking, of course, when the walls cracked in the corners. The ceiling, leaking, has started to fall out in places. On the back porch of the house, well, even now, there's a big crack running most of the length of the floor, which is visible. You'd have to  you'd have to cut the rug to see it. And it has started to undermine areas. It went through a small cottage there, underneath it, into the house. It's washing the yard away and such and moving  well, they have a small area that they had telephone poles in to more or less form a garden, a flower garden, and at various times it was used for a vegetable garden, and it moved some of the poles around, the force of the water."
Subsequently, the water problem was solved by piping the water north to the right-of-way of the Apalachee Parkway, which could have been done prior to the completion of the Koger complex.
As this court stated in New Homes of Pensacola, Inc. v. Mayne, Fla. App.(1st), 169 So.2d 345:
"... The law of Florida is well settled that the servitude that the owner of the higher adjoining land has on the lower land for the discharge of surface water naturally flowing onto the lower land from the dominant estate ordinarily extends only to surface water arising from natural causes, and cannot be increased or made more burdensome by the acts or industry of man. No person has the right to gather, by drainage ditches, dams, or other means, surface waters that would naturally flow in one direction, and divert them from their natural course, and cast them onto lands of a lower owner to his injury ..." (Emphasis supplied)
Here, Koger planned this complex of office buildings and parking areas to cover a large tract of land that was formerly undeveloped. It well knew and testified that it knew that the covering of the land would cause much more runoff than previously and that the existing drainage facilities beyond their property were inadequate to carry the increased volume. While Koger did not change the flow of the water from its natural course, it did by its acts and industry collect the water on its property through a storm sewer system and discharge it with great force at a single point directly in front of the home of the Allens, knowing full well that such action would flood the Allen property. This was done willfully, knowingly and deliberately.
In this day and age of construction of large concrete and asphalt complexes, it is only reasonable that persons building such complexes, do so in a manner that will reasonably guard against injuring another landowner who happens to be in the path of the outflow from their drainage system. Appellant in the case sub judice was grossly negligent in not coordinating its construction with improvement by the City of Tallahassee of the city drainage. By its actions, appellant ran roughshod over appellees after having assured them that if appellant obtained a change in zoning and built the complex, such would not damage appellees.
We have considered the other points raised by appellant in its brief and find them to be without merit.
Affirmed.
RAWLS, C.J., and JOHNSON, J., concur.