# FARM STORES, INC. v. SMITH, et al.

## Case No. CA83-1055

Sixth Judicial Circuit, Pasco County

May 23, 1985

### APPEARANCES OF COUNSEL

**Arthur C. Fulmer** for Third Party Plaintiffs, W. Victor Smith and Robbie S. Smith

**J. Patrick McElroy** for plaintiff, Farm Stores, Inc.

**Karl J. Brandes** for Third Party Defendant, Mary Alice Pillsbury.

**A.P. Gibbs** for Third Party Defendants Neumann/Wilson.

### OPINION OF THE COURT

WAYNE L. COBB, Circuit Judge.

This action was tried before the Court. It involves a problem with surface waters on property located in the Northwest corner of the intersection of State Road 54 East and Wire Road in Zephyrhills, Pasco County, Florida. The Plaintiff owns a parcel in the very corner of this intersection measuring approximately 135 feet on Wire Road and 242 feet on State Road 54. On the Eastern portion of this parcel is a convenience store and on the Western portion are some apartments.

The Defendants, Wilson and Neumann, own a parcel measuring

approximately 200 feet on Wire Road and 242 feet to the West lying contiguous and to the North of the Plaintiff's parcel. These Defendants purchased this parcel from successors in interest of purchasers from the Plaintiff.

The Plaintiff, Pillsbury, is the Personal Representative of the estates of Mr. and Mrs. Pratt and in such capacity holds title to a parcel measuring approximately 95 feet frontage on State Road 54 and extending 352 feet to the North and being contiguous to and West of the parcels of the Plaintiff and the Defendants, Wilson and Neumann. A rough sketch of these parcels showing their general relationships to one another is attached as an addendum to this judgment. The Plaintiff claims that the development of the Defendants' parcels is causing flooding of his parcel when it rains and demands injunctive relief and damages. The Defendants deny that the development of their parcels causes or contributes to the flooding of the Plaintiff's parcel. The Defendants, Wilson and Neumann, demand damages from the Plaintiff for losses resulting from the delay in development of their parcel caused by the temporary injunctive relief granted in this action.

The chronology of the development of these parcels appears to have been as follows:

In 1947, Mr. Joseph Ahl purchased 10 acres of the Northwest corner of the intersection of State Road 54 and Wire Road. That 10 acres included these 3 parcels. When he purchased the property, there was a little frame store in the corner and a small frame house to the West of the store. In the 1950's, Mr. Ahl built the current convenience store to the North of the little frame store and tore down the old store and the little house. He also put some gasoline pumps in front of the new store and when State Road 54 East was paved, he had some oyster shell or limerock fill placed in front of the new store and had that fill sprayed to minimize the dust. Mr. Ahl also built a home on the parcel of the Defendant, Pillsbury.

In the late 1950's, Mr. Ahl sold to Mr. Edward Sellars 2 acres of his property including the Plaintiff's parcel and the parcel of the Defendants, Wilson and Neumann. Mr. Sellars paved the parking area around the convenience store twice during the 10 years he owned it, apparently putting in some limestone base each time.

In June of 1969, the Plaintiff, Mr. Smith, purchased the 2 acre parcel from Mr. Sellars. He moved the apartment buildings onto the property, locating them West of the store, paved most of that portion of the property between the apartments and State Road 54, and "may have" resurfaced the parking area around the store.

38

In May of 1974, Mr. Smith sold the parcel now owned by Defendants, Wilson and Neumann, to Clifford Clark, who in 1974 or 1975 graded the parcel to make it suitable for parking for a fleamarket. In grading the lot, he testified he scraped off six inches or so, and scraped the lot to the West.

In the early 1970's, Mr. and Mrs. Pratt purchased the Defendant, Pillsbury's, parcel and turned the Ahl home into a restaurant and paved in front of the restaurant for parking. In the middle 1970's, Mr. and Mrs. Pratt sold the parcel to Robert Pritchard. While Mr. Pritchard owned the property, the restaurant burned. After the fire, Mr. Pritchard started filling the parcel to comply with the City of Zephyrhills' building requirements (Defendant, Pillsbury's, Exhibit #1) and went bankruptcy before he completed developing the site for rebuilding.

In 1982, the Defendants, Messrs. Wilson and Neumann, purchased their parcel and filled that parcel to about four inches above the crown of Wire Road in attempting to comply with the site plan approved by the City of Zephyrhills (Defendants', Wilson and Neumann, Exhibit #2).

The evidence shows that the Plaintiff now suffers flooding problems in and around his convenience store when there is a good rain. It also appears clearly that although there was some accumulation of surface waters around the convenience store before the Defendants, Wilson and Neumann, filled their parcel, the flooding of the inside of the store began after that parcel was filled.

The Plaintiff argues that the parcel of Defendants, Wilson and Neumann, is servient to his parcel and to the parcel of Defendant, Pillsbury, and must accept the surface waters running off of these two parcels. The Plaintiff also argues that when the Defendant, Pillsbury's parcel was filled, that increased the burden of surface waters running off onto Plaintiff's parcel, and that increased burden has been further exacerbated by the filling of the Wilson-Neumann parcel.

The Defendants, Wilson and Neumann, deny their parcel is servient to the Plaintiff's, and the Defendant, Pillsbury, argues that her parcel has not been developed in any manner that increases the burden of surface waters flowing onto the Plaintiff's parcel.

Florida law gives an upper land owner a servitude over a lower land owner which requires the lower (or servient) landowner to accept surface waters naturally flowing from the upper (or dominant) land onto the lower land. *Tampa Waterworks v. Cline*, 37 Fla. 586, 20 So.

780 (1896); *Edason v. Denison*, 142 Fla. 101, 194 So. 342 (1940); *Dade County v. South Dade Farms, Inc.*, 133 Fla. 288, 182 So. 858 (1938); *Seaboard All-Florida Ry. Co. v. Underhill*, 105 Fla. 409, 141 So. 306 (1932); *Brown v. Solary*, 37 Fla. 102, 19 So. 161 (1896).

However, even where an owner of upper land has a servitude to burden lower land with surface waters, the owner of the dominant estate cannot increase that burden by artificial means or development. *New Homes of Pensacola v. Mayne*, 169 So.2d 345 (Fla. 1st DCA 1964); *Koger Properties, Inc. v. Allen*, 314 So.2d 792 (Fla. 1st DCA 1975).

Surface water is water that is shed upon and passes from the land of one owner to that of another without any distinct and well-defined channel. *Tampa Waterworks v. Cline*, 37 Fla. 586, 20 So. 780 (1896).

Because of the extreme flatness of the surface of the ground in and around Zephyrhills, it is very difficult to determine the natural flow of surface waters. This difficulty is enhanced when there is piecemeal improvement or development of the area with paving, buildings, roads, ditches and grading or earth moving.

In this action, all parties presented evidence in the form of expert testimony, plays, and lay testimony. Several of the lay witnesses were familiar with the property for many years.

After considering very carefully all of the evidence, the arguments of counsel, and a view of the property, this Court finds as follows:

First, in its natural state, the parcel of the Defendants', Wilson and Neumann, was not lower than the parcel of the Plaintiff. Immediately prior to the Wilson-Neumann parcel being filled, the surface water was partially draining from the Plaintiff's parcel onto the Wilson-Neumann parcel as shown by some of the survey and demonstrative plays produced as evidence by the Plaintiff. But that was a result of the elevation of the Plaintiff's parcel by filling and paving. In fact, when the 1960 U.S. Geological Survey topographic map (Plaintiff's Exhibit #1) and the 1980 aerial survey map of Southwest Florida Water Management District (Plaintiff's Exhibit 310) are carefully considered along with the testimony of Mr. Ahl, Mr. Sellars, Mr. Murphy, and Mr. Clements, it appears clear that the general flow of surface water in that area was from the North, West and South to the intersection of Wire Road and State Road 54, and then from there, East and North toward Pretty Pond. Mr. Ahl said the low area was right in the corner of the intersection, but that otherwise the property was almost flat. Clements said water would stand in front of the store after a rain for sometimes 3-4 days. Sellars said every time it rained he had to wade

40

through water to get to his pumps in front of the store. He even had to buy his wife a pair of boots. He also said the land rose to the North.

Therefore, this Court finds that the Wilson-Neumann parcel carries no servitude to accept surface waters flowing from the Plaintiff's parcel.

Second, the site development on the Pillsbury parcel has not increased the burden of the Plaintiff's parcel to accept surface water flowing East from the Pillsbury parcel, nor has the development of the Wilson-Neumann parcel significantly affected the burden of surface water flowing from the Pillsbury parcel to the East.

The flooding problem of the Plaintiff is caused by the Plaintiff's store being built in the lowest spot in the area without any plan to accommodate even the surface water falling on the parcel, much less the surface water that naturally flows onto the parcel. The problem was gradually exacerbated by the development of the area, but was tolerable so long as the surface water coming onto Plaintiff's parcel could unnaturally flow or overflow onto the Wilson-Neumann parcel and there percolate into the soil. But that flow of surface waters from the Plaintiff's parcel onto the Wilson-Neumann parcel was not natural and did not follow any legal servitude.

The Plaintiff also argued that he had acquired a prescriptive right or easement to burden the Wilson-Neumann parcel with excess surface waters from his parcel. But that contention is supported by neither the facts nor the law.

The Court also finds that the Defendants, Wilson and Neumann, failed to carry their burden of showing damages on their Counterclaim.

IT IS THEREFORE

ADJUDGED that the claims of the Plaintiff against each of the Defendants for injunctive relief and for damages are hereby denied and the Defendants may each go hence without day and recover costs from the Plaintiff. Judgment is hereby reserved to determine and assess costs upon motion of the Defendants.

IT IS FURTHER

ADJUDGED that the Defendants, Wilson and Neumann, shall take nothing on their Counterclaim and that the Plaintiff may go hence without day and recover his costs on this claim. Judgment is hereby reserved to determine and assess these costs.

IT IS FURTHER

ADJUDGED that the temporary injunction previously issued by this Court is hereby dissolved.